ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
State Bar No. 209542
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3611
Fax: (415) 703-5843
E-mail: Michael.Quinn@doj.ca.gov
*Attorneys for Defendants Garcia and Meredith*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JOSE AMEZQUITA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**GARCIA, et al. ,**<br><br>Defendants. | 5:20-cv-08285-BLF<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS


Page

Introduction .......... 1
Statement of Issues .......... 2
Statement of Facts .......... 3
- I. The Initial Complaint and the Court's December 8, 2022 Order. .......... 3
- II. CDCR Guidelines Regarding the Use of Force. .......... 5
- III. Defendant Garcia's Actions on January 23, 2020. .......... 5
- IV. Plaintiff's February 25, 2020 Interview. .......... 6
- V. The Inmate Advisory Council and Plaintiff's February 2020 Removal and May 2020 Reinstatement. .......... 7

Argument .......... 7
- I. The Legal Standard for a Summary Judgment Motion. .......... 7
- II. Defendant Is Entitled to Summary Judgment Because the Evidence Shows He Did Not Use Excessive Force During the January 23, 2020 Incident. .......... 8
  - A. Legal Standards for Excessive Force Claims. .......... 8
  - B. Defendants' Use of 40 mm Sponge Rounds to Quell the Fight Was Not Excessive as a Matter of Law. .......... 9
    - 1. Extent of the Injury. .......... 10
    - 2. The Need for the Application of Force. .......... 10
    - 3. The Relationship Between the Need for a Forceful Response and the Amount of Force Used. .......... 11
    - 4. The Threat Reasonably Perceived by Defendants. .......... 11
    - 5. Efforts made to temper the severity of a forceful response. .......... 12
  - C. The Evidence Shows That Defendant Acted in Good Faith to Restore Order and Not for the Purpose of Causing Harm. .......... 12
- III. Defendant Meredith Did Not Retaliate Against Plaintiff. .......... 14
- IV. Plaintiff Lacks Evidence to Support Claims for Punitive Damages. .......... 15
- V. Defendant Garcia Is Also Entitled to Summary Judgment in Connection With Plaintiff's State Law Claims. .......... 16
  - A. Defendant Is Entitled to Summary Judgment On Plaintiff's Negligence Claim Because the Evidence Shows He Acted Reasonably During the Fight. .......... 16
  - B. Defendant Is Also Entitled to Summary Judgment With Regard to the Claim for Intentional Infliction of Emotional Distress. .......... 17
  - C. The Causes of Action for Battery and Violation of the Bane Act Are Also Meritless. .......... 18
- VI. Defendants Are Entitled to Qualified Immunity. .......... 19
  - A. The Qualified Immunity Standard. .......... 19

**TABLE OF CONTENTS**
(continued)

**Page**

B. Defendants Are Entitled to Qualified Immunity Because They Did Not Violate Plaintiff's First and Eighth Amendment Rights. .................. 20

C. Defendants Are Also Entitled to Qualified Immunity Because It Would Not Have Been Clear to a Reasonable Prison Official That Their Conduct Was Unlawful. ............................................................... 21

Conclusion.......................................................................................................... 22

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. City of Sacramento*
234 Cal.App.4th 41 (2015) ..... 19

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ..... 7, 8

*Arrendell v. Perez*
No. D065719, 2015 WL 5461502 (Cal. Ct. App. 4th. Dist. Sept. 17, 2015) ..... 17

*Brown v. Ransweiler*
171 Cal.App.4th 516 (2009) ..... 18, 19

*Bruce v. Ylst*
351 F.3d 1283 (9th Cir. 2003) ..... 14

*Burns v. Reed*
500 U.S. 478 (1991) ..... 19

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ..... 7

*Cochran v. Cochran*
65 Cal. App. 4th 488 (1998) ..... 17

*Dawes v. Walker*
239 F.3d 489 (2nd Cir. 2001) ..... 15

*Dicks v. Witte*
No. 16-cv-712-MMA-BLM, 2018 WL 295975 (S.D. Cal. Jan. 4, 2018) ..... 11

*Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*
330 F.3d 1214 (9th Cir. 2003) ..... 17

*Farmer v. Brennan*
511 U.S. 825 (1994) ..... 9

*Forest v. Prine*
620 F.3d 739 (7th Cir. 2010) ..... 13

*Glass v. Scribner*
No. 1:04-cv-05953-AWI-DLB, 2009 WL 2579657 (E.D. Cal. Aug. 19, 2009) ..... 10

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Hamilton v. Prudential Fin.*
No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792 (E.D. Cal. Sept. 27, 2007) .................. 18

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) .................. 19

*Hayes v. Cnty. of San Diego*
57 Cal. 4th 622 (2013) .................. 16

*Hope v. Pelzer*
536 U.S. 730 (2002) .................. 21

*Hudson v. McMillian*
503 U.S. 1 (1992) .................. *passim*

*Hughes v. Pair*
46 Cal.4th 1035 (2009) .................. 18

*Huskey v. City of San Jose*
204 F.3d 893 (9th Cir. 2000) .................. 15

*In Re Nirran W.*
207 Cal.App.3d 1157 (1989) .................. 16

*Jeffers v. Gomez*
267 F.3d 895 (9th Cir. 2001) .................. 12, 13, 20, 21

*LeMaire v. Maas*
12 F.3d 1444 (9th Cir. 1993) .................. 10

*Lopez v. City of Los Angeles*
196 Cal.App.4th 675 (2011) .................. 16

*Lust v. State Farm Mut. Auto. Ins. Co.*
No. 2:11–cv–02051–MCE–KJN, 2012 WL 592060 (E.D. Cal. Feb. 22, 2012) .................. 17

*Martinez v. Stanford*
323 F.3d 1178 (9th Cir. 2003) .................. 9

*Nelson v. County of Sacramento*
926 F. Supp. 2d 1159 (E.D. Cal. 2013) .................. 17, 18

*Pearson v. Callahan*
555 U.S. 223 (2009) .................. 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


*People v. Aguilar*
16 Cal. 4th 1023 (1997) .......... 16

*Phillips v. TLC Plumbing*
172 Cal.App.4th 1133 (2009) .......... 16

*Poland v. Stewart*
169 F.3d 573 (9th Cir. 1999) .......... 10

*Pratt v. Rowland*
65 F.3d 802 (9th Cir. 1995) .......... 14

*Rhodes v. Robinson*
408 F.3d 559, 567-68 (9th Cir. 2005) .......... 14

*Saucier v. Katz*
533 U.S. 194 (2001) .......... 20, 21

*Smith v. Wade*
461 U.S. 30 (1983) .......... 16

*Solomon v. Negrete*
No. 2:10-cv-2103-WBS-AC, 2014 WL 4109582 (E.D. Cal. Aug. 18, 2014) .......... 10

*Soranno's Gasco, Inc. v. Morgan*
874 F.2d 1310 (9th Cir. 1989) .......... 14

*Steckl v. Motorola, Inc.*
703 F.2d 392 (9th Cir. 1983) .......... 8

*Wallace v. Tull*
No. CV 09-5075-VAP-AGR, 2011 WL 1832717 (C.D. Cal. March 14, 2011) .......... 11, 13

*Whitley v. Albers*
475 U.S. 312 (1986) .......... *passim*

*Wilson v. Seiter*
501 U.S. 294 (1991) .......... 9

**STATUTES**

Bane Act .......... *passim*

California Civil Code
§ 52.1 .......... 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Welfare & Institutions Code
§ 15610.63 .... 18
§ 15657 .... 18

Tom Bane Civil Rights Act .... 19

**CONSTITUTIONAL PROVISIONS**

First Amendment .... *passim*

Eighth Amendment .... *passim*

Eighth Amendments .... 20, 21

First Amendments .... 20

U.S. Const. Amendment VIII .... 8

**COURT RULES**

Federal Rules of Civil Procedure
Rule 56 .... 1
Rule 56(a) .... 7

**TO PLAINTIFF JOSE AMEZQUITA, PRO SE:**

PLEASE TAKE NOTICE THAT, under Federal Rule of Civil Procedure 56, Defendants Garcia and Meredith move for summary judgment in connection with Plaintiff's (1) retaliation claim under the First Amendment against Defendant Meredith, (2) Eighth Amendment excessive force claim against Defendant Garcia, and (3) state law claims against Defendant Garcia based on the excessive force incident, namely, intentional infliction of emotional distress, battery, violation of the Banes Act, and negligence, on the grounds that there is no genuine issue as to any material fact, that they are entitled to judgment as a matter of law, and that they are also entitled to qualified immunity. In addition, Defendants move for summary judgment against Plaintiff's claim for punitive damages.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities, the supporting declarations and exhibits, a *Rand* notice, this Court's file, and any matters properly before this Court.

## INTRODUCTION

On January 23, 2020, a fight broke out among six inmates on A-Yard at Salinas Valley State Prison (SVSP). Plaintiff, a SVSP inmate who was not involved in the fight, claims that without any warning, Defendant Garcia "maliciously and sadistically shot indiscriminately" at him with a 40 mm block gun, resulting in a deep bone bruise to his sternum. Plaintiff claims that Defendant Garcia violated his Eighth Amendment rights, and asserts a number of state law causes of action, including battery and negligence.

As detailed below, there is no evidence that Garcia acted maliciously or sadistically to harm Plaintiff when he used a 40 mm launcher to stop the fighting inmates. To the contrary, in accordance with CDCR guidelines, Garcia gave verbal commands for the six fighting inmates to get down and stop fighting before using non-lethal force, in the form of four rubber rounds from a 40 mm launcher, one of which accidentally hit Plaintiff. He only used the non-lethal force when the six fighting inmates ignored demands to stop fighting. Because Garcia's use of force under those circumstances was appropriate, he is entitled to summary judgment on Plaintiff's Eighth Amendment claims and the related state law claims.

There is also no evidence that Defendant Meredith retaliated against Plaintiff by removing him from the Inmate Advisory Council (IAC) after he filed a grievance against Garcia. Courts have recognized that retaliation is not established by showing adverse activity by a Defendant after protected speech; rather, Plaintiff must show a nexus between the two. Here, there is no nexus between Plaintiff's filing of a grievance against Defendant Garcia and the erroneous removal of Plaintiff from the IAC by, among others, Defendant Meredith.

Summary judgment should also be granted against Plaintiff's claim for punitive damages because the undisputed material facts based on the evidence show that Plaintiff cannot prove the elements of such a claim for damages.

Finally, even if this Court were to find that Plaintiff's constitutional rights were infringed upon, which is not the case, Defendants are still entitled to qualified immunity because it would not have been clear to reasonable prison officials under the circumstances encountered by Defendants that their alleged conduct violated clearly established law.

## STATEMENT OF ISSUES

1. It is well established that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. In this case, Defendant Garcia used non-lethal force in order to break up a fight among inmates on a yard at SVSP after they refused to comply with verbal orders to get on the ground and stop fighting. One of the rounds inadvertently struck Plaintiff, who was not involved in the fight. Given that there is no evidence that Defendant Garcia acted maliciously or sadistically to harm Plaintiff, was he deliberately indifferent to Plaintiff's health or safety when he shot the round that hit and injured Plaintiff?

2. To state a claim of First Amendment retaliation, a plaintiff must allege that: (1) a state actor took some adverse action against an inmate; (2) because of; (3) that inmate's protected conduct; (4) such action chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Retaliation is not established by showing adverse activity by a Defendant after protected speech; rather, Plaintiff must show a

nexus between the two. Here, there is no nexus between Plaintiff's filing of a grievance against Defendant Garcia and the erroneous removal of Plaintiff from the IAC by Defendant Meredith. Did Defendant Meredith retaliate against Plaintiff?

3. The undisputed material facts show that Defendants lacked the evil motive or intent, or reckless or callous indifference to the rights of others that is required for Plaintiff to maintain a claim for punitive damages. Are Defendants entitled to summary judgment on this claim?

4. A prison official is entitled to qualified immunity if he does not violate clearly established law, or if it would not have been clear to a reasonable official under the circumstances that Defendants' conduct was unlawful. In this case, Plaintiff's First and Eighth Amendment rights were not violated, and a reasonable prison official would not have believed that Defendants' conduct was unlawful. Are Defendants entitled to qualified immunity?

## STATEMENT OF FACTS

### I. THE INITIAL COMPLAINT AND THE COURT'S DECEMBER 8, 2022 ORDER.

Plaintiff claims that on January 23, 2020, a fight broke out on A-Yard at SVSP, near the A5 building, which was roughly 50 feet away from him.[1] (ECF No. 12, ¶5.) He further contends that without any warning, Defendant Garcia "maliciously and sadistically shot indiscriminately" at him with a 40 mm block gun, resulting in a deep bone bruise to his sternum. (*Id.* at ¶6.) According to Plaintiff, "[a]t no time was the fight deemed a serious event or a major disruption" in the prison. (*Id.* at ¶7.) He claims it was such a minimum incident that none of the participants were charged with serious rule violations. (*Id.*) Plaintiff further asserts that nobody in close proximity to the A5 building was in any imminent danger of serious injury such that it would necessitate the firing of the gun, and that Defendant Garcia did so in a "wild and unarticulated [sic] fashion which was completely unnecessary in any effort to protect inmate [or] staff safety." (*Id.* at ¶9.)

On February 21, 2020, Plaintiff filed an inmate grievance alleging misconduct by

[1] In a February 2020 interview with prison staff regarding the incident, Plaintiff stated that the fighting inmates were about "fourteen to sixteen" feet from him when the fight began. (Meredith Declaration, ¶8, Ex. D.)

Defendant Garcia for the unnecessary shooting. (*Id*. at ¶14.) On February 25, 2020, Plaintiff was interviewed by Defendant Lieutenant Meredith regarding his staff complaint. (*Id*. at ¶15.) Plaintiff claims that because Defendant Meredith had "implicit bias" towards him, he felt intimidated and threatened during the interview. (*Id*.) Two days later, on February 27, 2020, Defendant Meredith allegedly placed information in his "SOMS record." (*Id*. at ¶16.) Because the information allegedly indicated that Plaintiff had numerous serious rules violations, he was being removed from his seat on the IAC. (*Id*.) Plaintiff claims that the information placed in the file was false, and that Defendant Meredith acted in retaliation for Plaintiff filing a grievance against Defendant Garcia. (*Id*. at ¶¶16-17.) Plaintiff responded by filing an appeal alleging misconduct against Defendant Meredith for removing him from the IAC without due process. (*Id*. at ¶16.)

The appeal against Defendant Garcia was denied in April 2020. (*Id*. at ¶19.) In May 2020, Plaintiff's appeal against Defendant Meredith was partially granted, and he was reinstated onto the IAC. (*Id*. at ¶21.)

Plaintiff also asserts a number of state law claims against Defendant Garcia, namely, excessive force, intentional infliction of emotional distress, battery, violation of the Banes Act, and negligence. (*Id*. at ¶26.) Plaintiff claims that Defendants "knew or should have known that their conduct, attitudes and deliberately indifferent actions created an unreasonable risk of serious harm" to him. (*Id*. at ¶28.) As a proximate result of these violations, he "has suffered, is suffering, and will continue to suffer irreparable harm." (*Id*. at ¶29.)

In its December 8, 2022 Order of Partial Service and Dismissal, this Court concluded that Plaintiff's "claim that Defendant Garcia shot him 'maliciously and sadistically,' without warning or necessity on January 23, 2020, was sufficient to state an excessive force claim under the Eighth Amendment." (ECF No. 20, 4:1-5.) It also exercised supplemental jurisdiction over a number of state law claims against Defendant Garcia based on the excessive force incident: intentional infliction of emotional distress, battery, violation of the Banes Act, and negligence. (*Id*. at 6:25-7:2.) With regard to Defendant Meredith, the Court concluded that "Plaintiff's allegations are sufficient to support a retaliation claim against Defendant Meredith for taking adverse actions

against Plaintiff for filing a grievance which served no legitimate correctional goal." (*Id.* at 6:3-5.)

## II. CDCR GUIDELINES REGARDING THE USE OF FORCE.

Section 51020.5 of the California Department of Corrections and Rehabilitation's Department Operations Manual (DOM), entitled "Use of Force Options," provides that:

> [w]henever possible, verbal persuasion should be attempted in an effort to mitigate the need for force. The type of verbal persuasion will vary dependent upon the inmate's ability to understand. If time permits, verbal orders should be issued prior to resorting to force and are required to be provided before controlled force is used.

(Request for Judicial Notice, Ex. A.)

The DOM further provides that "[u]se of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient." (*Id.*) One of the options available to staff are "less-lethal weapons," which are "any weapon that is not likely to cause death. A 37 mm or 40 mm launcher and any other weapon used to fire less-lethal projectiles is a less lethal weapon." (*Id.*) A 40 mm launcher fires 6325 impact rounds, non-lethal rubber rounds that officers are authorized to shoot below the waist.

## III. DEFENDANT GARCIA'S ACTIONS ON JANUARY 23, 2020.

During the morning of January 23, 2020, Defendant Garcia was serving as the Facility A5 Control Booth Officer at SVSP. (Garcia Declaration, ¶3.) At one point, he observed inmates Hadden, Ganfield, Cortes, Hernandez, Ramirez, and Valdez striking each other in the facial and upper torso areas with their fists. (*Id.*) Defendant gave them verbal orders to get down, but the inmates failed to comply with the orders and continued fighting. (*Id.* at ¶4.) Accordingly, to prevent further injuries and to gain compliance with a lawful order, Defendant aimed his 40mm launcher at the left thigh of inmate Hernandez. (*Id.*) Defendant fired one direct foam baton round from a distance of approximately 50 feet from his elevated position. (*Id.*) Due to lag time and the rapid movement of the fighting inmates, the 40mm round struck the center of Hernandez's back. (*Id.*)

Defendant continued to assess the incident as he reloaded a second direct foam baton round into the launcher. (*Id.* at ¶5.) He again gave the fighting inmates direct orders to get down with

negative results. (*Id.*) To prevent the fighting inmates from injuring each other, he aimed the 40mm launcher at inmate Cortes's right thigh while ordering the combative inmates to get down. (*Id.*) Because the inmates continued to ignore his verbal orders, he fired a direct impact foam baton round from approximately 52 feet but missed his intended target. (*Id.*) Due to inmate Cortes's movements, the round skipped on the ground and struck Plaintiff. (*Id.*)

Because the inmates continued fighting, Defendant Garcia immediately reloaded a third direct foam baton round and again gave the fighting inmates direct orders to get down. (*Id.* at ¶6.) Because the inmates again ignored his order, Garcia aimed the 40mm launcher at the left thigh of inmate Ramirez and fired another 40mm direct impact foam baton round from approximately 53 feet, which struck his intended target. (*Id.*) Nevertheless, the inmates continued fighting, so Garcia reloaded a fourth direct foam baton round. (*Id.* at ¶7.) Before firing the launcher for a fourth time, he again ordered the inmates to stop fighting and prone out. Because the inmates failed to comply with his orders and continued fighting, he aimed the 40mm launcher at the left thigh of inmate Ganfield. (*Id.*) That round failed to strike its target, and instead struck a concrete table. (*Id.*) At that point, the six inmates stopped fighting and Defendant observed a number of correctional officers placing handcuffs on them. (*Id.* at ¶8.) Defendant continued to provide gun coverage while responding staff placed the inmates in handcuffs and escorted them to the Facility A Gymnasium holding cell for medical evaluation. (*Id.*)

**IV. PLAINTIFF'S FEBRUARY 25, 2020 INTERVIEW.**

On February 25, 2020, Plaintiff was interviewed regarding an administrative grievance he filed in connection with the incident. (Meredith Declaration, ¶8, Ex. D.) During that interview, Plaintiff stated that while he was on the yard on January 23, 2020, he noticed a number of inmates arguing about "fourteen to sixteen feet to the left, next to me." (*Id.*) He further noted that the "free staff whistled like around maybe six-to-ten times." (*Id.*) Plaintiff then "started walking away from the fight," and moved to his right, next to two tables. (*Id.*) When Plaintiff turned around, he "saw . . . the shot coming," which dropped him "to the floor." (*Id.*) He then "got up" and was eventually examined by medical staff who provided him with pain medication, as the

round had struck him in the chest and left a bruise. (*Id.*) During the examination, Plaintiff reported that he "was walking" and the round "just got me." (Quinn Declaration, Ex. C.) Plaintiff returned to his housing unit after being seen by medical staff. (Meredith Declaration, ¶8, Ex. D.)

## V. THE INMATE ADVISORY COUNCIL AND PLAINTIFF'S FEBRUARY 2020 REMOVAL AND MAY 2020 REINSTATEMENT.

The Inmate Advisory Council at SVSP has formal positions that are allocated just like any other assignment within the institution. (Meredith Declaration, ¶4.) A review of Plaintiff's assignment history reveals that he has never been assigned to a formal position within the IAC. (*Id.*) However, the IAC also has other positions that are informal. (*Id.* at ¶5.) Examples of these include a Hispanic representative or Transgender representative. Those informal positions do not appear on an inmate's assignment history. (*Id.*)

Plaintiff was a Mexican IAC representative, an informal position within the IAC. (*Id.* at ¶6.) On February 27, 2020, Plaintiff was removed from that position because he had been "found guilty of numerous RVR-115's." (*Id.*) In the weeks after Plaintiff was removed from the informal position within the IAC, it was determined that an error had occurred during the review of his disciplinary history that resulted in his removal from the IAC. (*Id.* at ¶7.) Accordingly, during the review of Plaintiff's administrative grievance concerning the removal from the IAC, Chief Deputy Warden Parin concluded that there was insufficient evidence to support that decision. (*Id.*) Accordingly, Plaintiff was reinstated to the IAC. (ECF No. 12, ¶21.)

# ARGUMENT

## I. THE LEGAL STANDARD FOR A SUMMARY JUDGMENT MOTION.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its initial burden, summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983), citing *Ruffin v. Cty. of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979). If the evidence presented by the nonmoving party is "merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. There is no triable issue of fact unless the nonmoving party submits sufficient evidence for a jury to return a verdict in the nonmoving party's favor. *Id.*

## II. Defendant Is Entitled to Summary Judgment Because the Evidence Shows He Did Not Use Excessive Force During the January 23, 2020 Incident.

On January 23, 2020, Plaintiff was inadvertently hit in the chest with a 40-millimeter foam round while six other inmates were fighting less than 20 feet from him on a yard at SVSP. Because the fighting inmates continually refused multiple orders to stop fighting, serious injury could have occurred to them and correctional staff if Defendant Garcia had failed to take the actions he did to help stop the fight. (Garcia Declaration, ¶¶3-8.) As explained more fully below, Defendant Garcia did not violate Plaintiff's Eighth Amendment right to be free from excessive force because he did not shoot at Plaintiff maliciously and sadistically for the purpose of harming him.

### A. Legal Standards for Excessive Force Claims.

The Eighth Amendment prohibits infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.*

What is necessary to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley*, 475 U.S. at 320.) To prevail on an Eighth Amendment claim, the plaintiff must

show that objectively he suffered a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. *Farmer*, 511 U.S. at 834.

It is well established that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Furthermore, "[w]hen the ever-present potential for violent confrontation and conflagration, ripens into *actual* unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight." *Whitley*, 475 U.S. at 321 (emphasis in original). This is because prison officials "must make their decisions in haste, under pressure and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6."

The Ninth Circuit has relied on the factors set forth in *Hudson* to determine whether an officer's application of force was applied in a good faith effort to restore discipline. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The factors are: (1) the extent of the injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the prison officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evidenced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *Whitley*, 475 U.S. at 321.

### B. Defendants' Use of 40 mm Sponge Rounds to Quell the Fight Was Not Excessive as a Matter of Law.

Here, the Court should find that the six inmates who ignored verbal orders to stop fighting necessitated a forceful response, and that the *Hudson* factors support summary judgment for Defendant Garcia.

**1. Extent of the Injury.**

As to the first *Hudson* factor, while the extent of the injury suffered by Plaintiff is important, it is not dispositive as to whether Defendant violated the Eighth Amendment, particularly where, as discussed further below, all of the other *Hudson* factors favor Defendant. *See Hudson*, 503 U.S. at 7. The issue is also immaterial due to the absence of evidence that Defendant Garcia acted with malice or sadistic intent to cause Plaintiff harm. *See Solomon v. Negrete*, No. 2:10-cv-2103-WBS-AC, 2014 WL 4109582, at *20-21 (E.D. Cal. Aug. 18, 2014) (finding that officers who fired 40 mm rounds at fighting inmates, and one of the rounds struck the bystander plaintiff, were entitled to summary judgment because the plaintiff failed to produce evidence of the officers' malicious and sadistic intent to harm plaintiff).

**2. The Need for the Application of Force.**

There can be no doubt that there was a need for the application of force during the January 23, 2020 incident, as six inmates were striking each other in the facial and upper torso areas with their fists. Defendant gave them verbal orders to get down, but the inmates failed to comply with the orders and continued fighting. (Garcia Declaration, ¶¶3-8.)

Plaintiff contends that the force was unnecessary during the incident because none of the participants were charged with serious rule violations. (ECF No. 12, ¶7.) Such speculation is insufficient to raise a genuine issue of material fact. *Poland v. Stewart*, 169 F.3d 573, 590 (9th Cir. 1999) In actuality, courts have recognized that "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent behavior" when inmates become disruptive. *LeMaire v. Maas*, 12 F.3d 1444, 1458 (9th Cir. 1993); *see also Glass v. Scribner*, No. 1:04-cv-05953-AWI-DLB, 2009 WL 2579657, at *5 (E.D. Cal. Aug. 19, 2009) ("Insubordination is a matter taken very seriously within the confines of an institutional setting.") Here, the force used by Defendant Garcia was justified to prevent injuries to the fighting inmates and to restore order on the yard.

**3. The Relationship Between the Need for a Forceful Response and the Amount of Force Used.**

The third *Hudson* factor, regarding the relationship between the need for a forceful response and the amount of force used, favors Garcia's use of force. Here, there was a direct relationship between the need for a forceful response and the commensurate amount of force used. Because the six fighting inmates ignored the orders to "Get down!" and continued to fight, the 40 mm "less lethal" launcher was an appropriate force tool to use under the circumstances.

There can be no doubt that a reasonable relationship existed between the need for a forceful response and the amount of force used, because other measures to quell the riot had failed. *See Wallace v. Tull*, No. CV 09-5075-VAP-AGR, 2011 WL 1832717 (C.D. Cal. March 14, 2011) (defendant correctional officer's summary judgment motion granted where plaintiff was shot in the upper torso with a 40 mm launcher and where plaintiff was not fighting with another inmate, only standing, but refused to comply with orders to get down); *see also Dicks v. Witte*, No. 16-cv-712-MMA-BLM, 2018 WL 295975, at *2-3 (S.D. Cal. Jan. 4, 2018) (defendant correctional officer was entitled to judgment as a matter of law as to excessive-force claim where the plaintiff was involved in a fight occurring on the yard, custody staff ordered the inmates to get down on the ground, but the fighting inmates did not comply, and then custody staff used 40 mm launchers on fighting inmates). Under these circumstances, the use of less-lethal force used by Defendant Garcia was appropriate to stop the inmates from fighting and restore order.

**4. The Threat Reasonably Perceived by Defendants.**

The fourth *Hudson* factor, regarding the threat that was reasonably perceived by the defendant, supports Defendant Garcia' lawful use of force during the January 23, 2020 incident. While trying to quell the fight, which involved six inmates striking each other in the facial and upper torso areas with their fists, Defendant shouted multiple orders for them to "Get down!," which they ignored. (Garcia Declaration, ¶¶3-8.) Moreover, throughout the time he was firing the 40 mm launcher, the inmates continued to fight. (*Id.*) They only stopped after the fourth round was fired by Defendant. (*Id.*) In short, any reasonable prison official would have perceived that the incident was dangerous and that force was necessary to stop it.

**5. Efforts made to temper the severity of a forceful response.**

The fifth and final *Hudson* factor, regarding the efforts made to temper the severity of a forceful response, also favors Defendant, who reacted to the fight and did not prolong the use of force beyond what was necessary. He shouted multiple verbal orders for the fighting inmates to "Get down!" to no avail. (Garcia Declaration, ¶¶3-8.) The 40 mm "less lethal" launcher was used to separate the inmates, and Defendant stopped using it after the fighting inmates assumed prone positions. (*Id.*) Under these circumstances, Defendant Garcia used only the force necessary to stop the fight. Therefore, the Court should grant summary judgment for Defendant.

**C. The Evidence Shows That Defendant Acted in Good Faith to Restore Order and Not for the Purpose of Causing Harm.**

Plaintiff's excessive force claim against Defendant Garcia rests upon his ability to produce evidence sufficient to raise a triable issue of material fact as to Defendant's subjective state of mind at the time of the incident, i.e., evidence that Defendant Garcia manifested a malicious and sadistic intent by purposely aiming and firing his launcher at him. The Court should find that Defendant is entitled to summary judgment because the force was applied in a good-faith effort to restore discipline, and because Plaintiff cannot establish that Defendant maliciously and sadistically fired his 40 mm launcher for the very purpose of causing Plaintiff harm. (*Id.*)

There is no dispute that Plaintiff was "fourteen to sixteen" feet away from the fight involving the six other inmates when it began on January 23, 2020. (Meredith Declaration, ¶8, Ex. D.) It was not until Defendant Garcia fired his 40 mm launcher for a fourth time that the fighting inmates finally complied with the orders to assume a prone position and the fighting stopped. (Garcia Declaration, ¶¶7-8.)

The Ninth Circuit has granted summary judgment in favor of correctional officers in similar cases. For example, in *Jeffers v. Gomez,* 267 F.3d 895, 902-03 (9th Cir. 2001), correctional officers fired rifles at inmates during a prison riot. The plaintiff was shot by an errant bullet when prison officials were attempting to subdue the riot, where many were armed with makeshift stabbing weapons. *Id.* at 901-02. The evidence showed that when the defendants fired their rifles at the inmates, it was done to prevent serious injury or death to others, and was done while the

riot was ongoing. *Id.* The plaintiff was shot mistakenly when one of the defendants fired at the inmate who was attempting to stab the plaintiff with a nail that had been fashioned onto a plastic handle. *Id.* at 902. Although the plaintiff was struck, the Ninth Circuit concluded that the officers had taken the shots in a good faith effort to restore order because it was undisputed that there was a disturbance in the prison (inmates attacking other inmates), and there was no evidence suggesting the officers had any evil motive. *Id.* at 912.

Here, as in *Jeffers*, there is no genuine dispute as to Defendant's intention when he fired his 40 mm launcher. Defendant acted appropriately, as he had been trained to do, to respond and immediately quell a prison fight. Moreover, the use of force stopped once the fighting inmates were compliant with orders to assume a prone position. Furthermore, the fact that Plaintiff was struck in the chest with a 40 mm round does not prove that Defendant aimed at that area. *See Wallace v. Tull*, No. CV 09-5075-VAP-AGR, 2011 WL 1832717, at *5 (C.D. Cal. March 14, 2011); *see also Forest v. Prine*, 620 F.3d 739 (7th Cir. 2010) (the mere fact that a taser hit plaintiff's face did not create a genuine issue of material fact). While one of the 40 mm rounds fired by Defendant struck Plaintiff, the evidence establishes that it was not malicious or sadistic, and was at most an accident, which is insufficient to sustain an Eighth Amendment claim. *Whitley*, 475 U.S. at 319.

During his deposition, Plaintiff himself appeared to be uncertain as to whether an Eighth Amendment violation had occurred when Defendant Garcia fired his launcher on January 23, 2020. At one point, Plaintiff acknowledged that Defendant had aimed the launcher at the inmates who were fighting and "shot all of them." (Quinn Declaration, Ex. A, 67:10-14.) He later stated that he did not recall if Defendant had aimed the launcher at the fighting inmates. (*Id.* at Ex. A, 69:12-17.) Near the end of the deposition, Plaintiff asserted that "[h]e [Defendant] aiming to [sic] me. He aiming to me. He not trying to hit nobody else. He aiming to me. He trying to take my face off. I don't know why." (*Id.* at Ex. A, 74:16-25.)

Plaintiff's shifting account of Defendant Garcia's actions on January 23, 2020 cannot create a triable Eighth Amendment issue. There is no evidence that Defendant acted maliciously and sadistically for the very purpose of causing Plaintiff harm when he fired his 40 mm launcher

during the incident, which involved six fighting inmates who were ignoring his verbal commands to stop striking each other. Accordingly, the Court should find that Defendant Garcia-Cotes is entitled to summary judgment.

## III. DEFENDANT MEREDITH DID NOT RETALIATE AGAINST PLAINTIFF.

In *Rhodes v. Robinson*, the Ninth Circuit set forth the standard for a viable claim of First Amendment retaliation against a prison official. 408 F.3d 559, 567-68 (9th Cir. 2005). Five basic elements must be satisfied: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Id.*

An allegation of retaliation against an inmate's First Amendment right to file a prison grievance is generally sufficient to support a claim. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). However, an inmate must prove all elements of retaliation, including the absence of legitimate correctional goals for the conduct about which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). The burden is on the plaintiff to demonstrate that "there was no legitimate correctional purposes motivating the actions he complains of." *Id.* at 808. An inmate must also demonstrate that retaliation for the exercise of constitutionally-protected conduct was the "substantial" or "motivating" factor behind the officer's conduct. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Retaliation claims brought by inmates must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807. Specifically, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* Furthermore, courts must treat retaliation claims brought by inmates "with skepticism and particular care" because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a

constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In his complaint, Plaintiff claims that Defendant Meredith took retaliatory actions against him for filing a staff complaint against Defendant Garcia. (ECF No. 12, ¶16.) However, Plaintiff's deposition testimony revealed that his retaliation claim is solely based on the particular sequence of events following the January 23, 2020 incident. Specifically, during his deposition, Plaintiff confirmed that his retaliation claim merely contends that Defendant Meredith's placement of allegedly false information in his prison file after he submitted a grievance against Defendant Garcia following the January 2020 incident constituted retaliation on the part of Defendant Meredith. (Quinn Declaration, Ex. A, 30:17-31:10.)

Retaliation is not established by showing adverse activity by defendants after protected speech; rather, plaintiff must show a nexus between the two. (*Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore, because of this")). Here, there is no nexus between Plaintiff's filing of a grievance against Defendant Garcia and the removal of Plaintiff from the IAC. As noted by Defendant Meredith himself, in the weeks after Plaintiff was removed from his informal position within the IAC, it was determined that an error had occurred during the review of his disciplinary history that resulted in that decision. (Meredith Declaration, ¶7.) In short, there is no evidence that Defendant Meredith retaliated against Plaintiff; to the contrary, Plaintiff's removal from the IAC was a mistake that was quickly corrected once officials became aware of it. (*Id.* at Ex. C.) Because Plaintiff lacks evidence that Defendant Meredith's actions were undertaken because of protected conduct by Plaintiff, his retaliation claim must fail. Accordingly, Defendant Meredith is entitled to summary judgment in connection with that claim.

## IV. PLAINTIFF LACKS EVIDENCE TO SUPPORT CLAIMS FOR PUNITIVE DAMAGES.

Plaintiff prays for punitive damages against Defendants. (ECF No. 12, p. 3 of 10.) But summary judgment should be granted against this claim for damages because, as the evidence cited above shows, he lacks evidence that Defendants acted with the "evil motive or intent" or the

"reckless or callous indifference to the federally protected rights of others," necessary to justify his claim for punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## V. DEFENDANT GARCIA IS ALSO ENTITLED TO SUMMARY JUDGMENT IN CONNECTION WITH PLAINTIFF'S STATE LAW CLAIMS.

This Court's December 8, 2022 Order also exercised supplemental jurisdiction over a number of state law claims against Defendant Garcia based on the excessive force incident: intentional infliction of emotional distress, battery, violation of the Bane Act, and negligence. (ECF No. 20 at 6:25-7:2.) As explained more fully below, as with the Eighth Amendment claim, Defendant is entitled to summary judgment in connection with Plaintiff's state law claims.

### A. Defendant Is Entitled to Summary Judgment On Plaintiff's Negligence Claim Because the Evidence Shows He Acted Reasonably During the Fight.

Under California law, the elements of negligence are: (1) a duty to use due care; (2) breath of that duty; (3) which proximately causes; (4) injury. *Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 685 (2011). The duty element is a legal question to be decided by the court. (*Phillips v. TLC Plumbing*, 172 Cal.App.4th 1133, 1139 (2009).

California courts have recognized that "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 632 (2013). Additionally, "[l]aw enforcement personnel have a degree of discretion as to how they choose to address a particular situation." *Id.*

Further, state courts have noted that the "use of hands or fists alone" may produce serious injury. *See People v. Aguilar*, 16 Cal. 4th 1023, 1028 (1997) (stating that "the use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury"); *see also In Re Nirran W.*, 207 Cal.App.3d 1157, 1161-62 (1989) (noting that a single punch to the jaw may support a finding of assault by means of force likely to produce great bodily injury).

In this case, it is undisputed that a fight on SVSP's yard occurred on January 23, 2020, that multiple inmates were ignoring orders to assume a prone position, and that they were fighting each other. As discussed more fully above, the fight was chaotic and dangerous. Defendant Garcia acted reasonably under the circumstances to restore order and to keep other staff and inmates safe. *See Arrendell v. Perez*, No. D065719, 2015 WL 5461502, at *4-6, (Cal. Ct. App. 4th. Dist. Sept. 17, 2015) (finding a correctional officer not negligent for using lethal force, but missing her target and shooting an innocent bystander inmate in the left eye, because she was reasonably trying to stop other inmates from fighting).[2] Accordingly, this Court should find that firing the 40 mm launcher was within the range of reasonable conduct under the circumstances.

### B. Defendant Is Also Entitled to Summary Judgment With Regard to the Claim for Intentional Infliction of Emotional Distress.

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998). "California courts have set a high bar for emotional distress claims, requiring 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Lust v. State Farm Mut. Auto. Ins. Co.*, No. 2:11–cv–02051–MCE–KJN, 2012 WL 592060, *3 (E.D. Cal. Feb. 22, 2012) (quoting *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191 (2011)).

In *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1163 (E.D. Cal. 2013), the plaintiff alleged that the defendants, among other things, threw him to the ground, pinned his right arm behind his back, punched him in the head, grabbed his left ankle and dragged him on the road and into a standing position before handcuffing him. In addition to his constitutional claims under Section 1983, plaintiff Nelson also asserted state tort claims for battery, assault,

---

[2] Federal courts "may consider unpublished state decisions." *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

false arrest and intentional infliction of emotional distress, as well as elder abuse under California Welfare & Institutions Code sections 15610.63 and 15657. *Id.* at 1164. His emotional distress allegedly included “pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry.” *Id.* at 1172. The court noted that those “types of conclusory statements lack specific facts to show their nature and extent,” and added that “[s]ome level of emotional distress is inevitable in our society.” *Id.* Accordingly, it concluded that plaintiff had failed to plead facts demonstrating why his alleged emotional distress rose to the level that “no reasonable [person] ... should be expected to endure it.” *Id.*

Other courts have rejected a plaintiff’s conclusory emotional distress allegations. For example, in *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009), the court found a claim that plaintiff suffered discomfort, worry, anxiety, upset stomach, concern, and agitation did not comprise severe emotional distress. Similarly, in *Hamilton v. Prudential Fin.*, No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792, *4 (E.D. Cal. Sept. 27, 2007), the court concluded that general allegations of depression, frustration, nervousness, and anxiety were insufficient to show severe emotional distress.

Plaintiff’s complaint fails to set forth specific facts regarding the emotional distress that he allegedly experienced following the January 23, 2020 incident. (ECF No. 12, ¶26.) Given the lack of evidence demonstrating that Plaintiff suffered severe or extreme emotional distress following the incident, Defendant is entitled to summary judgment in connection with the claim for intentional infliction of emotional distress.

### C. The Causes of Action for Battery and Violation of the Bane Act Are Also Meritless.

The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526-27 (2009). A state law battery claim is a

counterpart to a federal claim of excessive use of force. *Id*. at 527. In both, a plaintiff must prove that the peace officer's use of force was unreasonable. *Id*.

As discussed, Defendant Garcia' use of the 40mm launcher to break up a fight on SVSP's yard was reasonable, as the incident was dangerous and force was necessary to stop it. Accordingly, Defendant is entitled to summary judgment in connection with the battery claim.

Plaintiff's final state claim asserts that Defendant violated California Civil Code section 52.1, also known as the Tom Bane Civil Rights Act. That statute authorizes an action for injunctive and other equitable relief where a person, whether or not acting under color of law, interferes or attempts to interfere, "by threat, intimidation, or coercion," with the exercise or enjoyment by any individual or individuals of rights secured by state or federal law. *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 66 (2015). Here, Defendant did not interfere with Plaintiff's rights. To the contrary, one of the rounds that Defendant fired in an effort to stop the six inmates from fighting accidentally struck Plaintiff. (Garcia Declaration, ¶¶3-5.) Because Defendant Garcia's actions did not violate the Bane Act, summary judgment should be granted in favor of Defendant in connection with that claim.

## VI. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Defendant Garcia did not violate Plaintiff's Eighth Amendment rights during the January 2020 incident, nor could he have recognized that using non-lethal force in order to stop a fight among inmates on SVSP's yard violated the Constitution. In addition, Defendant Meredith did not violate Plaintiff's First Amendment rights when he erroneously determined that Plaintiff was not eligible for the IAC. Therefore, Defendants are entitled to qualified immunity.

### A. The Qualified Immunity Standard.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991) (citation omitted).

The Supreme Court has recognized that qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Immunity "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.*

The *Pearson* decision held that a court may exercise its discretion in deciding how it will address the two-part test from *Saucier v. Katz*, 533 U.S. 194 (2001), which examines (1) whether there was a violation of a constitutional right and (2) if so, whether that right was "clearly established" when the defendant acted. *Id.* at 818. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 201-02.

Moreover, it is not enough for a plaintiff to offer factually unsupported allegations. "[T]o prevail on the motion for summary judgment, a plaintiff must 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury." *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (citations omitted).

### B. Defendants Are Entitled to Qualified Immunity Because They Did Not Violate Plaintiff's First and Eighth Amendment Rights.

As mentioned, *Pearson* provides lower courts with discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. 555 U.S. at 235-37. However, *Pearson* also recognized that the *Saucier* protocol is often beneficial. *Id*. In this case, regardless of which prong this Court chooses to address first, Defendant is entitled to qualified immunity and summary judgment.

The first step under *Saucier* is to determine whether, taken in the light most favorable to the party asserting the claim, the facts alleged show that the government official's conduct violated a constitutional right. 533 U.S. at 201. Defendants do not dispute that prisoners have certain rights under the First and Eighth Amendments. As discussed above, however, Plaintiff has failed to show how those constitutional rights were violated by Defendants in this action. Under *Saucier*,

this Court's inquiry should end here. *Id.* Therefore, Defendants respectfully request that this Court find that they are protected by the doctrine of qualified immunity.

### C. Defendants Are Also Entitled to Qualified Immunity Because It Would Not Have Been Clear to a Reasonable Prison Official That Their Conduct Was Unlawful.

Even if this Court were to weigh judicial precedent and come to the conclusion that, in retrospect, Defendants' actions were unconstitutional, it would not have been clear to a reasonable prison official in the circumstances that such conduct was unlawful. In determining whether Defendants violated clearly established law, the key question is whether the state of the law provided "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The analysis must focus on "what [she] reasonably understood [her] powers and responsibilities to be, when [she] acted, under clearly established standards." *Saucier*, 533 U.S. at 208.

In this case, it would not have been evident to a reasonable prison official that a court could somehow find that Defendant Garcia violated the Eighth Amendment when he complied with the DOM by first issuing a verbal order to six inmates who were fighting, and only used non-lethal force when they ignored his verbal directives. It also would not have been evident that unintentionally shooting an inmate who was not involved in the fight amounted to malicious or sadistic conduct.

As discussed above, this case is similar to *Jeffers*, where the Ninth Circuit held that officers were entitled to qualified immunity. Like the officers in *Jeffers*, Defendant Garcia is entitled to qualified immunity because a reasonable officer faced with circumstances in this case could not have believed that firing 40 mm launchers at inmates who were non-compliant with orders to assume a prone position—during a fight between inmates on a prison yard where other force options were ineffective—was unlawful. The Supreme Court's decision in *Whitley* recognized that prison officials have a duty to protect prison employees, visitors, and the inmates themselves, and recognized the difficult balance that this duty may entail. *Whitley*, 475 U.S. at 320. In light of the complexities, the Supreme Court cautioned that "prison administrators . . . should be accorded wide-ranging deference in the adopting and execution of policies and practices that in

their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22. Based on the nature of the fight and the inmates' aggressive behavior and resistance to verbal orders, it would not have been clear to a reasonable officer that the immediate use of force by Defendant Garcia was unlawful. Therefore, because the law and circumstances on January 23, 2020, did not put Defendant on notice that his conduct would be clearly unlawful, he is entitled to qualified immunity.

Finally, it would not have been evident to a reasonable prison official that a court could somehow find that Defendant Meredith violated Plaintiff's First Amendment rights when he mistakenly determined that Plaintiff was not eligible to serve on the IAC. Because there is no evidence that Defendant Meredith intended to retaliate against Plaintiff in concluding that he was ineligible for the IAC, Meredith is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and qualified immunity should be granted

Dated: November 3, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General

*/s/ Michael Quinn*
MICHAEL J. QUINN
Deputy Attorney General
*Attorneys for Defendants Garcia and Meredith*

SF2023600149
43947899.docx

# CERTIFICATE OF SERVICE

Case Name: ***Amezquita, J. (AS4217) v. Garcia-Cortez, et al.*** No. **5:20-cv-08285-BLF**

I hereby certify that on November 3, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**
- **DECLARATION OF MICHAEL J. QUINN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (with Exhibits A-C)**
- **DEFENDANTS' *RAND* WARNING TO PLAINTIFF REGARDING OPPOSING SUMMARY JUDGMENT**
- **DECLARATION OF D. MEREDITH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (with Exhibits A-C)**
- **EXHIBIT D: DECLARATION OF D. MEREDITH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (with Exhibit A)**
- **DECLARATION OF P. GARCIA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (with Exhibit A)**
- **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On November 3, 2023, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Jose G. Amezquita, AS4217**
**Salinas Valley State Prison**
**P.O. Box 1050**
**Soledad, CA 93960**
*In Pro Per*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 3, 2023, at San Francisco, California.

| | |
|---|---|
| H. Su | */s/ H. Su* |
| Declarant | Signature |

SF2023600149
43947346.docx