ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
State Bar No. 209542
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3611
Fax: (415) 703-5843
E-mail: Michael.Quinn@doj.ca.gov
*Attorneys for Defendants*
*Garcia and Meredith*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JOSE AMEZQUITA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**GARCIA, et al. ,**<br><br>Defendants. | 5:20-cv-08285-BLF<br><br>**DECLARATION OF MICHAEL J. QUINN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, Michael J. Quinn, declare and state:

1. I am a Deputy Attorney General in the California Attorney General's Office. I am the counsel of record for Defendants Garcia and Meredith in this matter. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could so testify. I submit this declaration in support of Defendants' motion for summary judgment.

2. On September 28, 2023, I took Plaintiff Amezquita's deposition. Attached as **Exhibit A** is a true and correct copy of transcript excerpts from that deposition.

3. Attached as **Exhibit B** is a true and correct copy of a declaration from the custodian of records of the central file of Plaintiff Amezquita.

4. Attached as **Exhibit C** is a true and correct copy of the "Medical Report of Injury or Unusual Occurrence" concerning Plaintiff Amezquita that was prepared after the January 23, 2020 incident. The medical report is in Plaintiff Amezquita's central file.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California, on November 3, 2023.

***s/ Michael J. Quinn***
MICHAEL J. QUINN
Deputy Attorney General

SF2023600149
43931968.docx

# EXHIBIT A

COPY

# In the Matter Of:

AMEZQUITA V. GARCIA-CORTEZ

5:20-CV-08285-BLF

## JOSE G. AMEZQUITA

*September 28, 2023*

ESQUIRE
DEPOSITION SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com

positions on the Inmate Advisory Council and there's informal, correct?

A Yes.

Q Formal and informal, correct? And your testimony is that you were a -- you were on a -- you were formally -- you had a formal position within the IAC, correct?

A Yes, in building 4. Anything regarding Hispanic, we go and fix it. We talk and fix the issue what's going on in the building. Only Hispanics. I'm not saying in the yard. I'm not saying in another location. I'm talking about I'm the rep on Hispanics, building 4.

Q Okay.

A I want to make it clear. Building 4. That's it.

Q Let me -- so let me just focus for a moment on the retaliation claim that you brought against Defendant Meredith. Do you recall that claim?

A Yes.

Q I'm just trying to understand it. So you claim that after you filed the grievance against Garcia-Cortez, Lieutenant Meredith placed false information in the SOMS file, correct?

A Yes.

Q And it's your contention that Meredith's placement of the false information in the SOMS file after you filed the grievance against Garcia-Cortez constitutes retaliation on the part of Meredith, correct?

A Yes.

Q And that's -- that's the -- your retaliation claim, correct? That's an accurate summary of your retaliation claim, correct?

A Yes.

Q In paragraph 16 you refer to Meredith having a relationship with Garcia-Cortez. What relationship do they have? Have you seen them together talking?

A Always. Whenever.

Q Let me slow you down. When did you see them talking before this incident? Did you ever see them talking?

A A couple times I saw them when I came out from my building to throw the trash. I saw them talking a lot of times in front of the basketball court. It's a gate there. All the officers need to pass that gate. Couple times I saw them talking to him real close. For Lieutenant Meredith to tell me to drop that complaint form, put the camera off, drop it, or you never know what can happen, what does that mean?

Q So my question is: Was he aiming at the fighting inmates the entire time?
A (Unintelligible) he drop me, I look -- no, no, no. I look to the tower. The windows open -- open -- clear open, and he shooting, shooting, shooting, shooting. He never stop and say get down. Never.
Q And he shot four -- four to six times is your testimony, correct?
A Yes. Yes.
Q Was he aiming at the inmates who were fighting?
A Yes. Yes, he shot all of them.
Q He was aiming at the inmates who were fighting, correct?
A Yes.
Q He was not aiming at you, correct?
A That's -- my problem is -- is aiming the people fighting. I not fighting. Why he shoot me? That's my question. Why he shot me? I'm not fighting.
Q I understand. I understand the frustration but -- and -- and I -- and the -- the anger over it.
But my question is that he was aiming at the inmates who were fighting, correct?
A I think so. He hit me the first round. The first one, he shot me. I'm not fighting.
Q The first round, yes. And these -- are you

understand you weren't fighting. I understand you weren't involved in the fight. I understand that it's your allegation that you were hit on the first -- the first time he discharged the weapon. It ended up hitting you.

What I want to know is: Was -- was he aiming at the inmates who were fighting the entire -- during this entire incident? The four to six rounds that were fired in order to stop the fight, was he aiming --

A Michael.

Q Just let me finish my question.

Was he aiming at those inmates -- fighting inmates?

A Michael, I don't -- I don't recall. I'll be honest with you. I don't remember.

Q So it's your testimony you don't --

A I don't remember that.

Q Okay. Just -- I just want to clarify that you don't -- you don't know when -- whether he was aiming at you or at the other inmates?

A I don't remember. I need to see my paperwork. It's true what I put there.

Q Okay. That's fine.

A I don't know. I'm not going to say something that I don't say.

another whether Officer Garcia-Cortez was aiming at you or aiming at the fighting inmates?

A I know he aiming to me. I don't know why or what, but I know he shot me trying to shoot my face down. I don't know. I don't know. Michael, I don't know.

Q You don't know?

A I don't know. Whatever.

Q But what -- you were there physically present at that incident, and you claim you can see -- you can see --

A His face, yes.

Q -- the tower?

A The window's real big. You know what? Like that.

Q Fine. And my question is: You can't say one way or another whether he was aiming at you or the inmates?

A He aiming to me. He aiming to me. He not trying to hit nobody else. He aiming to me. He trying to take my face off. I don't know why. I never done nothing to him, and that's my answer, Michael. Sorry. I'm sorry, (unintelligible) that's -- I saw his face. Every single time I see his face, I get scared. I be honest.

STATE OF CALIFORNIA )
COUNTY OF SANTA CRUZ )

I, Heidi Bloemker, certified shorthand reporter, do hereby certify:

That the foregoing proceedings were stenographically reported by me (via videoconferencing) at the time and place therein set forth and were thereafter transcribed at my direction;

That the foregoing pages are full, true, correct, and complete transcript of my shorthand notes taken at said time and place to the best of my ability.

I further certify that I am not a relative or employee of any attorney or any of the parties, nor am i financially interested in the action.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

H. BLOEMKER
CSR NO. 12944

# EXHIBIT B

DECLARATION OF CUSTODIAN OF RECORDS

I, Regina E. Alaniz, declare as follows:

I am employed by the California Department of Corrections at Salinas Valley State Prison, Soledad, California as a Correctional Case Records Manager (A). In this capacity, I am a duly authorized custodian of records maintained on inmates committed to the custody of the California Department of Corrections and housed at this institution.

A central file is maintained on each inmate housed in the California Department of Corrections. The file is maintained by the records office of each institution housing the inmate, and transferred with the inmate to any other institution.

The documents and entries in documents pertaining to an inmate are prepared at or near the time of their occurrence by persons with knowledge of the circumstances or events.

The documents attached hereto are true and correct copies of documents from the file of inmate Amezquita, Jose G. CDCR #AS4217 and maintained in the regular course of business by the Department of Corrections at this institution.

I declare under penalty of perjury that I am competent to testify as a witness, that the foregoing is true and correct and based on my personal knowledge except for those statements based on information and belief, and as to those statements I believe them to be true, and that if called as a witness, I would so testify.

Executed on November 2, 2023 at Soledad, California.

[signature]

# EXHIBIT C

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

CDCR 7219 (Rev. 01/18)



| NAME OF INSTITUTION | LOCATION OF EVALUATION | DATE |
|---|---|---|
| SVSP | A-Medical | 1/23/19 |

REASON FOR REPORT: ☐ ALLEGATION ☐ ON THE JOB INJURY ☑ USE OF FORCE ☐ INJURY ☐ OTM RETURNS ☑ UNUSUAL OCCURRENCE ☐ PRE AD/SEG ADMISSION ☐ R&R ☐ OTHER ____

| NAME LAST | FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|
| Amezquita | Jose | AS4217 | N/A | N/A |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | TIME SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| A-YARD | 1/23/19 | 0930 | 0940 | 0950 | N/A |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE: "I was walking and just got me" Anthony

| INJURIES FOUND? YES (circled) / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| Swollen Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |
| Chemical Agent Exposure? YES / NO (circled) | |
| Chem. Agent Exposure Area | EX |
| Decontaminated w/ Water? YES / NO / REFUSED | N/A |
| Decontaminated w/ Air? YES /NO / REFUSED | N/A |
| Self-decontamination Instructions given? YES / NO (circled) | |
| Staff issued Exposure packet? YES / NO (circled) | |




Q 15 min. check times

| Initial | 1st Check |
|---|---|
| N/A | N/A |
| **2nd Check** | **Final** |
| N/A | N/A |

TIME/DISPOSITION: RTC 0950

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDOs | ASSIGNMENT AREA |
|---|---|---|---|
| A. Camacho PT [signature] | 2866200 | S/S | A5L |

IR informed