Jose G. Amezquita CDCR# AS4217
Salinas Valley State Prison A4-201
PO BOX 1050 Soledad, CA 93960

FILED
APR 15 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. AMEZQUITA,<br>Plaintiff,<br><br>v.<br><br>P. GARCIA,<br>LT. MEREDITH,<br>C/O NAVARRO,<br>C/O HOUGH,<br>C/O DOWNS,<br>F. ARMENTA,<br>C/O MARTINEZ,<br>R. DIAZ, K. ALLISON,<br>DOE(S) 1-10,<br>Defendants. | Case No. 5:20-cv-08285-BLF<br><br>AMENDED<br>SECOND AMENDED COMPLAINT<br><br>Demand for Jury Trial |

## INTRODUCTION

This is a civil rights complaint being made by Jose G. Amezquita (Plaintiff), a state prisoner asking for declaratory relief as well as general and punitive damages. Plaintiff is alleging excessive and unnecessary use of force in violation of the Eighth Amendment to the United States Constitution. Plaintiff is also alleging retaliation in violation of the First Amendment to the United States Constitution. In addition, Plaintiff alleges the torts of assault and battery as well as negligence under state law. Finally, Plaintiff alleges the violation of the Bane Act (California Civil Code § 52.1).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law tort claims under 28 U.S.C. § 1367.

3. The plaintiff was incarcerated at all relevant times at Salinas Valley Prison or at R.J. Donovan Correctional Facility.

4. Defendants Garcia and Meredith were staff members of Salinas Valley State Prison and were employed by the California Department of Corrections and Rehabilitation (CDCR) and are sued in their individual and official capacities.

5. Defendants Navarro, Hough, Downs, Armenta, and Diaz were staff members of R.J. Donovan Correctional Facility and were employed by the CDCR and are sued in their individual and official capacities.

6. Defendants Doe 1-10 are individuals whose names and capacities are not known at this time. They are sued in their individual and official capacities.

7. All of the defendants have acted, and continue to act under color of state law at all relevant times mentioned in this Amended Second Amended Complaint.

## FACTUAL ALLEGATIONS

8. In October of 2018 Plaintiff was a victim of staff misconduct and a "Green Wall" conspiracy at R.J. Donovan Correctional Facility in San Diego, California (hereinafter "Donovan").

9. The pattern and practice of misconduct committed by CDCR

correctional officers and their administrators began to affect Plaintiff in early 2018.

10. The situation which unfolded at R.J. Donovan in early 2018 demonstrated that a corrupt environment existed because Plaintiff was forced to make a choice between helping the correctional officers as an informant or suffering their actions to subject Plaintiff to cruel and unjust penalties.

11. During 2018 at Donovan, correctional officers were regularly using intimidation and retaliation to force prisoners to intimidate and act violently towards other prisoners.

12. Sometime during June of 2018, Plaintiff was housed at Donovan on Facility A (which was a Level III General Population ("GP") yard) when C/O Navarro told Plaintiff several times that Plaintiff needed to become Navarro's informant, otherwise, Plaintiff was going to get "caught up" and hurt.

13. Plaintiff refused Navarro. Near to this period of time an SNY (Sensitive Needs Yard or Protective Custody) inmate arrived in Plaintiff's building (A2) which was located on a GP yard. On the SNY inmate's first day of restricted housing (known as orientation or "fish" status), Navarro opened this new inmate's door and forced him to go out to the yard with the other inmates.

14. Subsequently Navarro opened Plaintiff's door as well. After telling the New Arrival to go back to his cell because he was going to get hurt out on the yard, Plaintiff told Navarro that he needed to put the New Arrival back in his cell. Navarro told Plaintiff that either Plaintiff was going to become Navarro's informant or he needed to go out to the yard.

15. Plaintiff told the New Arrival to stay right next to the building while Plaintiff walked the yard. Almost immediately two GP inmates started stabbing the New Arrival while other inamtes started beating Plaintiff with their fists and their feet. The correctional officers on the yard said and did nothing in what Plaintiff believed to be a message from Navarro.

16. Upon Plaintiff's reentry into building A2, Navarro told Plaintiff, "You see what happens?" The very next day Plaintiff met with staff psychologist Dr. Pena and memorialized the event.

17. A few days later, Navarro came to Plaintiff's cell laughing at Plaintiff. Navarro told Plaintiff that there was someone waiting for him at the gate out on the yard. Plaintiff asked Navarro who it was and Navarro laughed some more and said that he didn't know. Navarro told Plaintiff to go and see. Plaintiff then went to the gate and the Investigative Services Unit ("ISU") was waiting for Plaintiff and they were also laughing at Plaintiff.

18. Next to the gate and along the fence were about 20 GP inmates waiting to receive their packages. Plaintiff asked the officers what was going on and their response was that they needed to read Plaintiff his rights first. All of this occurred in close proximity to the inmates lined up along the fence. Plaintiff asked again what was going on and one of the officers whispered to Plaintiff that Plaintiff should already know what's up. Plaintiff was told in no uncertain terms that Plaintiff needed to help the officers, or else.

19. The ISU officer leading the pack then said in a loud voice that if Plaintiff did not sign the paper he was holding in his hand, Plaintiff was going to be taken to the hole which is what inmates call administrative segregation housing.

20. The ISU officer continued speaking in a loud voice and told Plaintiff that He believed Plaintiff had beat up a Black inmate and dragged him into Plaintiff's cell and raped him. This was all said within earshot of the inmates lined up along the fence.

21. Following this encounter Plaintiff went directly to the mental health building and spoke with Dr. Pena in order to memorialize the incident and attempt to get help in overcoming the forces arrayed against him.

22. Two weeks later Plaintiff was sent to Atascadero State Hospital.

23. After a brief stay at Atascadero State Hospital, Plaintiff was returned to Donovan and Facility A. Shortly thereafter, Plaintiff was placed into administrative segregation pending an investigation. It was never fully explained to Plaintiff what was being investigated. After a period of time it was determined that Plaintiff had committed no misconduct.

24. On October 18, 2018, Plaintiff appeared before an Institutional Classification Committee ("ICC") where Associate Warden F. Armenta told Plaintiff that the only way for Plaintiff to return to the Level III GP yard was to help Armenta as an informant. Plaintiff explained to Armenta that Plaintiff was almost Level II in points all while Armenta is telling Plaintiff that he was being sent to the Level IV SNY yard. Plaintiff vociferously opposed being sent to the Level IV SNY yard because Plaintiff was sure to be violently attacked there. Armenta told Plaintiff that it was he who ran the prison and that he didn't care what Plaintiff had to say about Plaintiff's safety concerns. After dismissing Plaintiff from the committee meeting, Plaintiff told Armenta privately that he would kill himself before he would allow himself to be taken to the Level IV SNY yard. Armenta refused to change his mind and ordered Plaintiff returned to his cell to await transfer to Level IV.

25. At approximately 1355 hours on October 18, 2018, Plaintiff was escorted back to his cell by C/O Hough and C/O Downs. Plaintiff told these officers that he was stressed out, was not feeling well at all, and that he wanted to kill himself. The tall officer told Plaintiff to "do your thing" while the short officer laughed and said, "yeah" and shoved Plaintiff into the cell. After removing Plaintiff's handcuffs through the food port, the short officer told Plaintiff that he was "GP" and that he should take care of his business and go ahead and "do it" in reference to Plaintiff's declaration that he was not feeling well and wanted to kill himself.

26. Once in the cell, Plaintiff began tearing up his mattress pad to make a noose with and in the process discovered a sharp blade secreted in the pad. Plaintiff then proceeded to cut his wrist which caused him to bleed profusely. The correctional officers saw this was occurring and did nothing. After several minutes several additional officers arrived to assist the officers who had been observing Plaintiff's actions and Plaintiff was then extracted from his cell.

27. Plaintiff was taken to the Correctional Treatment Center where the bleeding was stopped and his wound was closed with surgical tape. Plaintiff was subsequently placed into an observation cell due to his elevated risk of committing suicide.

28. Eventually Plaintiff was forced out of crisis bed housing and released from segregated housing and taken to the Level IV SNY yard. Plaintiff was housed with another inmate on Facility C at Donovan who helped Plaintiff submit a 602 appeal. When Plaintiff heard nothing back about his appeal, he submitted a Form 22 Request asking about the appeal. Plaintiff heard nothing still; however, Plaintiff was taken by special transport to Salinas Valley State Prison ("SVSP") within days of his complaint. Plaintiff was transferred

on a Saturday which accentuates the "special" nature of the transport.

29. Once at SVSP, Plaintiff met an inmate named Moreno-Murillo who helped him submit another appeal. When this appeal was also ignored, Plaintiff became concerned for his own personal safety. Plaintiff was concerned that he might be seriously hurt or killed at SVSP by the "Green Wall". The Green Wall is a prison gang made up of correctional officers who band together to enforce prison discipline through improper and illegal means. The Green Wall is believed to have originated at Salinas Valley State Prison.

30. As time went on, Plaintiff met with prisoners who informed him that he had to stand up to the Green Wall and that the prisoners he was speaking with could help him. It was believed that there was a one-year time limit for staff complaint 602s and so Plaintiff submitted another appeal related to the October 18, 2018 incident to the SVSP Appeals Coordinator. This 602 was forwarded to Donovan approximately late summer, 2019 and by September 26, 2019, Plaintiff received a response to his 602. Near to this period of time, Plaintiff filed a civil rights complaint in the Southern District Court.

31. Eventually Plaintiff lost this case in the Southern District Court due to the nefarious machinations of the CDCR and the Attorney General's Office to stymie Plaintiff's efforts in the middle of a pandemic.

32. Beginning in January of 2020, Plaintiff began feeling pressure from SVSP staff related to his civil litigation against correctional officers at Donovan.

33. On January 23, 2020, a fight broke out on Facility A at SVSP. The fight was near the A5 Building, about 50 feet away from Plaintiff. Without any warning Defendant Garcia indiscriminately shot Plaintiff with a 40 mm block gun which resulted in a deep bone bruise to Plaintiff's sternum

along with emotional trauma.

34. At no time was the fight deemed a serious event or a major disruption in the security of the prison. It was such a minimal incident that the partcipants were not even charged with a Rules Violation Report (115). Plaintiff, despite his being shot and injured, was not even listed or mentioned in the CDCR Incident Package.

35. Plaintiff (and others) have observed Garcia indiscriminately and unnecessarily fire his 40 mm block gun on several occasions.

36. Plaintiff is informed and believes that there was no legitimate penological interest necessitating Garcia's reckless firing of the 40 mm block gun on January 23, 2020.

37. Following this incident on January 23, 2020, Garcia told another inmate that he had been waiting to get Plaintiff and Plaintiff had "got what he had coming."

38. Plaintiff is informed and believes that Garcia intentionally caused harm to Plaintiff. Garcia subsequently told Plaintiff he could complain all he wanted to because it didn't matter to him, Garcia had a strong union. Garcia added that Plaintiff had got what he had coming.

39. Following Plaintiff's return from medical triage and treatment on January 23, 2020, Garcia told Plaintiff that the next time he would use the Ruger Mini14 Assault Rifle.

40. On February 21, 2020, Plaintiff filed a 602 appeal alleging staff misconduct against Garcia for shooting Plaintiff unnecessarily which caused pain and suffering to come upon Plaintiff.

41. On February 25, 2020, Plaintiff was interviewed by Defendant Meredith. Meredith exhibited implicit bias and animus towards Plaintiff

causing Plaintiff to feel intimidated and threatened. This interview was recorded.

42. On February 27, 2020, Meredith placed a file in Plaintiff's Strategic Offender Management System ("SOMS") record which stated that Plaintiff had numerous serious rules violations and therefore must be removed from his position on the Inmate Advisory Council. Plaintiff did not in fact have any recent serious rules violations at that time and Meredith knew this and thus it can be circumstantially inferred that Meredith's actions were in retaliation; which is a part of the pattern and practice of the Green Wall correctional officers.

43. In March of 2020, Plaintiff filed a 602 appeal alleging staff misconduct against Meredith for removing Plaintiff from the Inmate Advisory Council and for creating the false record within SOMS.

44. In May of 2020, Plaintiff's 602 appeal against Meredith was partially granted in that the CDCR acknowledged the improprieties of Meredith's actions yet failed to mention the falsified record within SOMS.

45. In March of 2020 Plaintiff had also filed a medical negligence Complaint in the Monterey County Superior Court. In August of 2023 Plaintiff lost this stste tort suit due to the nefarious actions and machinations of the state including both the court itself as well as the Department of Justice. These hinderances were exacerbated by the negligence of the CDCR and SVSP staff members and constituted active interference with Plaintiff's ability to access the courts and meaningfully litigate his case.

46. In early 2021, Plaintiff was issued a false Rules Violation Report for refusing medical isolation when Plaintiff was in fact near death as evidenced by his emergency evacuation to the Salinas hospital and his being sedated and intubated for almost two weeks due to pneumonia and COVID-19. This

hospitalization was a direct and legal cause of Plaintiff's inabilities in the courts during the pandemic.

47. In 2023, Plaintiff was issued another false Rules Violation Report for Delaying an Officer. The officer (without any medical training) declared the Plaintiff as having overdosed yet there was no alcohol or drugs found in Plaintiff's system. Plaintiff was having a medical emergency and Doe staff members wrote him up in what can be circumstantially inferred to be a retaliatory act.

48. In 2023, Plaintiff was violently attacked by an inmate who should not have been out of his cell. This inmate was able to surreptitiously exit his cell without staff's knowledge because staff had failed to perform their required duties to verify that each cell door is secured. During this violent attack, correctional officers excessively and unnecessarily sprayed Plaintiff with copious quantities of pepper spray. This resulted in a severe reaction in Plaintiff's scarred lungs which were permanently damaged by the CDCR's failure to respond adequately to Plaintiff's requests that medical help be summoned. As Plaintiff pleaded with the responding officers as well as a sergeant for Plaintiff's rescue inhaler, over and over, each and all of them refused to give a resue inhaler to Plaintiff. Plaintiff was also denied the opportunity to remove his contaminated clothes and was forced to use the shower with his clothes on and handcuffed.

49. All throughout 2023 C/O Martinez retaliated against Plaintiff as a part of the Green Wall pattern and practice to oppress and discipline inmates who complain via 602 appeals or through the courts. Martinez specifically withheld food, mail, and privileges arbitrarily and capriciously without any authority to do so nor any legitimate penological interest.

//

## EXHAUSTION OF REMEDIES

50. Plaintiff has exhausted all available administrative remedies.

51. Plaintiff has timely filed a California state government claim form.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
### Unnecessary use of Force

52. Plaintiff realleges and incorporates by reference herein paragraphs 1-51 above.

53. The actions of Defendant Garcia in the use of physical force against Plaintiff, without need or provocation to do so, were done maliciously and sadistically and thus constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION
### Retaliation

54. Plaintiff realleges and incorporates by reference herein paragraphs 1-53 above.

55. The actions of Defendant Meredith to attempt to silence Plaintiff's complaints and to remove him from the Inmate Advisory Council through the creation of a false report had the effect of punishing Plaintiff for the exercise of rights, immunities, and privileges guaranteed to him by the First Amendment to the United States Constitution.

THIRD CAUSE OF ACTION
Access to the Courts

56. Plaintiff realleges and incorporates by reference herein paragraphs 1-55 above.

57. The actions of the Doe defendants to actively interfere with Plaintiff's ability to meaningfully litigate his claims in the courts and to fail to confer upon Plaintiff the capability to do so violated his inalienable right to seek redress from governmental oppression and thus violated his rights under the First Amendment to the United States Constitution.

FOURTH CAUSE OF ACTION
State Law Claims

58. Plaintiff realleges and incorporates by reference herein paragraphs 1-57 above.

Count One - Negligence

59. Doe defendants who actively interfered with Plaintiff's ability and capability to litigate his nonfrivolous complaints in the courts violate California Code of Regulations, Title 15 ("15 CCR") § 3160. Doe defendants had a duty of care under 15 CCR § 3391 (a)(1) and (a)(2) to abide all laws, Title 15 regulations, departmental policies, and local operating procedures. As a direct and legal result of these failures, Plaintiff was injured and Doe defendants caused these injuries due to their negligence and thus they are not immune from liability under Government Code § 820.

60. As a direct and legal result of the Doe defendants failure to perform their required duties, Plaintiff has suffered great mental, emotional, and nervous pain and suffering. As a direct and foreseeable result of these

injuries, Plaintiff has suffered general damages.

Count Two - Bane Act

61. Defendants Garcia, Meredith, Navarro, Hough, Downs, Armenta, Martinez, and the Doe defendants, and each and all of them, interfered with Plaintiff's rights through the use of threats, intimidation, and coercion and interfered directly with Plaintiff's rights under the Bane Act.

Count Three - Vicarious Liability

62. Defendants Diaz and Allison were both the Secretary of the CDCR during the relevant times mentioned in this Complaint. The CDCR is a public entity.

63. Pursuant to California Government Code § 815.2, a public entity is liable for the negligence of its agents and employees unless the agent or employee is immune by statute. Doe defendants who are alleged to have acted negligently enjoy no such immunities. Defendants Garcia, Meredith, Navarro, Hough, Downs, Armento, and Martinez, through their intentional acts to violate the Bane act (Cal. Civ. Code § 52.1) violated a law and also enjoy no immunities.

64. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants Garcia, Meredith, Navarro, Hough, Downs, Armenta, Martinez, and the Doe defendants were authorized by Diaz and Allison, and each of the things done by him or her, they or them, was done in the capacity as agent or employee for Diaz or Allison.

65. Pursuant to California Government Code § 815.6, Defendants Diaz and Allison are vicariously liable for the negligent or wrongful acts and omissions committed by their agents and employees as alleged herein.

66. Pursuant to California Government Code § 844.6(d), the injuries caused to Plaintiff which are the direct and legal result of an agent's or an employee's negligent or wrongful act or omission are excepted from providing the statutory liability immunity contained in Government Code § 844.6(a).

67. Pursuant to California Government Code § 815.6, Defendants Garcia, Meredith, Navarro, Hough, Downs, Armenta, Martinez, and the Doe defendants negligent acts and omissions alleged herein did not demonstrate any apparent reasonable diligence, and to the contrary, exhibited willfil and conscious disregard for Plaintiff's rights and subjected him to cruel and unjust hardships.

## PRAYER

WHEREFORE, Plaintiff prays judgment as follows:

1. For general damages according to proof,

2. For exemplary damages according to proof,

3. For a declaration that the acts and omissions alleged herein violated Plaintiff's rights under the Constitution and laws of the United States and the State of California, that they were negligent and wrongful and caused damages to come upon Plaintiff as a direct and legal result thereof.

4. For costs of suit incurred, and

5. For other such relief as the Court deems just and proper.

## VERIFICATION

I, Jose G. Amezquita, hereby declare the foregoing to be true and correct under penalty of perjury under the laws of the United States. I have executed this verification at Salinas Valley State Prison in Soledad, Monterey County, California on April 10, 2024.



BY: [signature]

Jose G. Amezquita

UNITED STATES DISTRICT COURT
Northern District of California
Case No. 5:20-cv-08285-BLF

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Michael Jay Harris CDCR# AD0793, declare:

I am over 18 years of age and a party to this action. I am a resident of Salinas Valley State Prison, in the county of Monterey, State of California. My prison address is: SVSP A4-127 PO BOX 1050 Soledad, CA 93960.

On 4/10/24 (DATE),

I served the attached: AMENDED SECOND AMENDED COMPLAINT (DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

Michael J. Quinn
Deputy Attorney General
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 4/10/24 (DATE)

[signature] (DECLARANT'S SIGNATURE)