United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JOSE G. AMEZQUITA,

Plaintiff,

v.

GARCIA-CORTES, et al.,

Defendants.

Case No. 20-cv-08285-BLF

**ORDER REGARDING MOTIONS IN LIMINE**

[Re: ECF Nos. 91, 93, 94, 95, 96, 98, 99, 100, 101]

Before the Court are Plaintiff Jose G. Amezquita's four motions *in limine* ("MILs"), *see* ECF Nos. 93, 94, 95, 96, and Defendants Correctional Officer Pedro Garcia-Cortes and Lieutenant Dwayne Meredith's five MILs, *see* ECF Nos. 91, 98, 99, 100, 101. The Court held the Final Pretrial Conference on October 2, 2026, and issued oral rulings on the Parties' MILs. ECF No. 122. The Court subsequently issued orders approving and adopting the Parties' Joint Pretrial Statement, *see* ECF No. 123, and setting trial schedule and procedures, *see* ECF No. 124. For the reasons stated by the Court on the record at the hearing and set forth below, the Court rules on the Parties' MILs as follows.

## I. BACKGROUND

Plaintiff is an inmate at Salinas Valley State Prison. ECF No. 12 at 4. On January 23, 2020, six inmates initiated a physical altercation on one of the prison yards. ECF No. 102 at 2. Plaintiff alleges that although he was not involved in the fight, Mr. Garcia-Cortes shot him directly in the chest with a 40mm foam baton round. *Id.* Mr. Garcia-Cortes concedes that his shot struck Plaintiff, but asserts that he was aiming at the inmates engaged in the brawl. *Id.* Mr. Garcia-

United States District Court
Northern District of California

Cortes alleges that he missed his intended target, causing the 40 mm round to ricochet and unintentionally hit Plaintiff. *Id.* at 2–3. Plaintiff alleges that the shot bruised his sternum and caused him substantial pain for several months. *Id.* at 3. Plaintiff further contends that after he filed a grievance against Mr. Garcia-Cortes, Defendant Meredith retaliated against Plaintiff by removing him from his position on the Inmate Advisory Council. *Id.*

On November 23, 2020, Plaintiff initiated this action. ECF No. 1. Following summary judgment, Plaintiff's remaining allegations include claims of (1) excessive force (42 U.S.C. § 1983), (2) violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1), (3) civil battery, and (4) negligence. ECF No. 102 at 4. Plaintiff has also brought a First Amendment retaliation claim against Mr. Meredith under 42 U.S.C. § 1983. *Id.*

## II. LEGAL STANDARD

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevant evidence is admissible unless another rule or federal law provides otherwise," while "irrelevant evidence is inadmissible." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *accord* Fed. R. Evid. 402 (providing that relevant evidence is admissible unless precluded by the Constitution, federal statute, the federal rules of evidence, or a rule prescribed by the Supreme Court). Rule 401's "basic standard of relevance . . . is a liberal one." *Crawford*, 944 F.3d at 1077 (alteration in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993)). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also* *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001).

## III. DISCUSSION

### A. Plaintiff's Motions in Limine

1. *MIL No. 1 to Bar Comment, Argument, Testimony or Evidence of Arrests, Tattoos, Law Enforcement Contacts, Other Litigation and Other Alleged Bad Acts of Plaintiff*

In his MIL No. 1, Plaintiff moves to exclude argument and evidence of arrests, past incarceration, parole or probation status, alleged prior bad acts, drug use, law enforcement contacts, prison security levels and points, prison classification assignments, Plaintiff's prior civil lawsuits, and his mental health status. ECF No. 93 at 2. During the October 2, 2026 hearing, Plaintiff also requested that this MIL be expanded to exclude evidence of Plaintiff's prior convictions. Plaintiff argues that this evidence should be excluded as inadmissible character evidence under Fed. R. Evid. 404(b). *Id.* at 4. He asserts that admitting this evidence would needlessly damage his credibility, mislead the jury, and cause unfair prejudice. *Id.* Defendants do not oppose this MIL or the exclusion of Plaintiff's prior convictions. ECF No. 103 at 1 n.1.

Absent certain exceptions, Fed. R. Evid. 404 prohibits the admission of evidence "of a person's character" or a "crime, wrong, or act . . . in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(a)(1), (b)(1). The Court finds that this evidence is of little probative value and would be highly prejudicial to Plaintiff. Given Defendants' nonopposition and the risk of unfair prejudice, the Court GRANTS Plaintiff's MIL No. 1.

2. *MIL No. 2 to Bar Comment, Argument, Testimony or Evidence of Commendations, Awards, Promotions, or Accolades Received by Defendants and Similar Evidence*

In his MIL No. 2, Plaintiff seeks to exclude testimony or evidence of Defendants' commendations, awards, promotions, or accolades. ECF No. 94 at 1–2. Plaintiff argues that this evidence is inadmissible character evidence with "virtually no probative value" that would cause Plaintiff "unfair prejudice." *Id.* at 2 (citing Fed. R. Evid. 404, 405).

Defendants argue that Plaintiff's motion is overly broad and might exclude relevant evidence such as Defendants' "training and knowledge" about matters related to this litigation. ECF No. 103 at 1. They further argue that this MIL is premature because evidence of Defendants' accolades might be admissible to rebut any attack on Defendants' character or credibility. *Id.* (citing Fed. R. Evid. 608(a)).

When assessing whether a correctional officer used excessive force, the trier of fact must determine whether "the use of force could plausibly have been thought necessary," or was "wanton and unnecessary." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In making this determination, it may be necessary for the jury to evaluate whether the "threat [was] reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (citation and internal quotations omitted). The Court recognizes that certain aspects of a correctional officer's training and background may tend to make it "more or less probable" that the officer reasonably perceived the threat and employed adequate mitigation efforts. *See, e.g.*, *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (noting that "training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable").

As to Defendant Meredith, the First Amendment retaliation claim brought against him has five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). As with Plaintiff's Eighth Amendment claim against Mr. Garcia-Cortes, the Court recognizes that certain aspects of Mr. Meredith's training may tend to make it "more or less probable" that his actions were reasonably intended to "advance a legitimate correctional goal."

Plaintiff's MIL No. 2 does not identify any specific evidence that Plaintiff wishes to exclude. As noted during the hearing, a fine line may exist between evidence of a commendation and evidence of an officer's experience (e.g., the subtle distinction between a service award and recognition for ten years of service and training). At this stage, it is unclear what evidence Plaintiffs will submit and whether Defendants will need an opportunity to rehabilitate their character. *See* Fed. R. Evid. 608(a) ("[E]vidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.")

Under these circumstances, the Court finds it appropriate and commonplace to provide Defendants with the opportunity to introduce themselves to the jury. Therefore, the Court will permit testimony and evidence of Defendants' position, training, experience, and years of service. However, the Court DEFERS ruling on Plaintiff's MIL No. 2 to exclude evidence of Defendants' commendations, awards, promotions, or accolades. If Defendants present evidence that is excessively self-aggrandizing, Plaintiff may object at trial.

*3. MIL No. 3 to Preclude Comment, Argument, Testimony or Evidence That Defendants and Other California Department of Corrections and Rehabilitation Personnel Were Not Subjected to Disciplinary Action or Investigation Stemming Out of Incidents Pertinent to This Case or Were "Exonerated"*

In MIL No. 3, Plaintiff moves to exclude argument or evidence that the California Department of Corrections and Rehabilitation did not subject Defendants to an investigation, did not pursue disciplinary action, or otherwise exonerated them for the actions at issue in this litigation. ECF No. 95 at 2. Plaintiff argues that admitting this evidence would mislead the jury by causing them to believe that Defendants "were found not liable for a Constitutional violation against Plaintiff." *Id.* at 3.

Defendants oppose this motion, arguing that Plaintiff failed to identify any "specific investigations or exonerations he seeks to exclude." ECF No. 103 at 2. Defendants further argue that the results of any internal investigations are relevant to assessing Mr. Meredith's intent and

determining whether Mr. Garcia-Cortes "acted in a good-faith effort to maintain discipline or maliciously and sadistically to cause harm." *Id.* at 2. Defendants also contend that reviews of peace officer conduct are typically admissible under Fed. R. Evid. 803(8). *Id.*

Rule 403 provides that the Court may "exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice." Fed. R. Evid. 403. Considering the arguments presented by the Parties, the Court finds that this evidence should be excluded due to its marginal relevance and high risk of prejudice. The absence of disciplinary action or Defendants' exoneration would only be somewhat relevant to determining whether Defendants' violated Plaintiff's constitutional rights. Admitting this evidence, however, risks misleading the jury by causing the jurors to credit these investigative findings over an objective assessment of the evidence presented at trial. This would be highly prejudicial to Plaintiff. Admitting this evidence would also cause undue delay by prompting an effective "mini trial" in which the attorneys relitigate the facts and conclusions from these internal investigations. For these reasons, the Court GRANTS Plaintiff's MIL No. 3 to exclude evidence that Defendants were not subject to disciplinary action, investigation, or were otherwise exonerated.

*4. MIL No. 4 to Bar Comment, Argument, Testimony or Evidence of Defendant Meredith's Alleged Good Faith and Feelings About Being Sued*

Plaintiff's final MIL seeks to exclude argument or testimony concerning "Defendant Meredith's alleged good faith and feelings about being sued." ECF No. 96 at 1. Plaintiff argues that this evidence is irrelevant because there is no good faith defense to a First Amendment retaliation claim. *Id.* at 2. Plaintiff further maintains that admitting this evidence will cause unfair prejudice, waste time, and confuse the jury. *Id.* at 2–3.

Defendants argue that evidence of good faith is relevant to proving the elements of a First Amendment retaliation claim by helping determine whether "there was no legitimate correctional purposes motivating" Mr. Meredith's actions. ECF No. 103 at 3 (citing *Rhodes*, 408 F.3d at 567–

68). Defendants also contend that this evidence is relevant to determining "whether Plaintiff's exercise of constitutionally-protected conduct was the 'substantial' or 'motivating' factor behind Mr. Meredith's conduct." *Id.* at 3 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). Finally, Defendants assert that evidence of Mr. Meredith's "feelings about being sued" might be relevant depending on the evidence presented at trial. *Id.*

To succeed on a First Amendment retaliation claim Plaintiff must demonstrate that Mr. Meredith's actions had no legitimate connection to a correctional goal. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." (citation and internal quotations omitted)). Plaintiff must also show that his constitutionally protected conduct "was a 'substantial' or 'motivating' factor" for the retaliation. *Soranno's Gasco*, 874 F.2d at 1314. Testimony regarding whether Mr. Meredith was acting in good faith when he removed Plaintiff from the Inmate Advisory Council would tend to make it "more or less probable" that Plaintiff's constitutionally protected speech was not a motivating factor for Mr. Meredith's conduct. Given that Mr. Meredith's motivation is relevant to Plaintiff's First Amendment claim, Defendants must be provided with an opportunity to provide such evidence. For this reason, the Court DENIES Plaintiff's MIL No. 4 as to evidence and testimony regarding Mr. Meredith's alleged good faith.

The Court finds, however, that testimony and argument concerning Mr. Meredith's feelings about being sued are not admissible. Mr. Meredith's feelings about this suit are completely irrelevant to Plaintiff's First Amendment claim and may unfairly prejudice Plaintiff. *See Crawford*, 944 F.3d at 1077 ("[I]rrelevant evidence is inadmissible."). Accordingly, the Court GRANTS Plaintiff's MIL No. 4 as to testimony about Mr. Meredith's feelings about being sued.

**B. Defendants' Motions in Limine**

1. *MIL No. 1 to Bar Plaintiff's Improper "Rebuttal" Expert*

In Defendants' MIL No. 1, they move to exclude rebuttal witness Dirk Duffner, and all opinions or argument based on his expert report. ECF No. 91 at 1. On July 17, 2026, Defendants disclosed a report from Tony Diaz, a prison practices and use-of-force expert. *Id.* at 1. On August 17, 2026, after the deadline for initial expert disclosures, Plaintiffs disclosed their rebuttal expert, licensed mechanical engineer Dirk Duffner, and his report. *Id.* at 1–2. Defendants argue that under Federal Rule of Civil Procedure 26, parties can only submit an expert rebuttal "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *Id.* at 2 (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii); *Matthew Enterprise, Inc. v. Chrysler Group LLC*, No. 13-cv-04236, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016)). Defendants maintain that "[p]ortions of an expert's rebuttal that opine on subjects that were not addressed in the expert report purportedly being rebutted may be excluded." *Id.* at 3 (quoting *Hyundai Motor Company v. Hyundai Technology Group, Inc.*, No. 23-cv-01709, 2025 WL 1711440, at *2 (C.D. Cal. May 14, 2025)). Defendants assert that Mr. Duffner's report ("Duffner Report") is inadmissible because it sets forth new theories and discusses topics that were not addressed in Mr. Diaz's expert report ("Diaz Report"). *Id.* at 4–5.

In opposition, Plaintiffs argue that the Duffner Report is appropriate because it addressed only the opinions presented in the Diaz Report. ECF No, 112 at 2. Plaintiffs assert that the Diaz Report addressed the ultimate issues of this case: (1) "that a rubber bullet inadvertently struck [Plaintiff] as result of a ricochet, and (2) that [Plaintiff]'s opposing contention—i.e., that [he] was intentionally shot by Defendant Pedro Garcia-Cortes—is incorrect." *Id.* Plaintiffs argue that by addressing the central issue of this litigation, "Defendants opened the door for [Plaintiff] to offer a rebuttal expert opinion on how the shooting occurred." *Id.* Plaintiff then proceeds to compare the

expert reports to show that the Duffner Report stays within the confines of the subject matter discussed in the Diaz Report.

In his report, Mr. Diaz concluded that (1) "there is no physical evidence . . . that would lead [him] to believe that Officer Garcia-Cortes intended to strike [Plaintiff] with the direct impact round or that he intentionally aimed the 40mm launcher at [Plaintiff]"; (2) "a 40mm direct impact round . . . can ricochet off a surface and indiscriminately strike an unattended target"; (3) "there was no error . . . on the part of Officer Garcia-Cortes when he . . . aimed for [another inmate]'s right thigh"; and (4) "[t]he ricochet off the ground eventually struck [Plaintiff] in the chest area." ECF No. 102-6 at 12–14.

In rebuttal, Mr. Duffner conducted a ballistics analysis and concluded that Plaintiff's "injury was the result of a direct fire to his chest area, and not the result of a ricochet of a round fired elsewhere." ECF No. 102-3 at 4. Based on his analysis, Mr. Duffner also concluded that the "ricochet of a round fired elsewhere never rises high enough above the ground to cause [Plaintiff]'s injury." *Id.*

After reviewing these reports, the Court agrees with Plaintiff that the Duffner Report did not exceed the boundaries of a proper rebuttal witness. The Diaz Report concluded that Mr. Garcia-Cortes did not aim at Plaintiff directly, but that the bullet ricocheted off the ground before hitting Plaintiff in the chest. ECF No. 102-6 at 12–14. The Duffner Report directly contradicts Mr. Diaz's findings by concluding that Plaintiff could not have been struck in the chest unless Mr. Garcia-Cortes fired at him directly. EF No. 102-3 at 4. Because the Duffner Report only rebuts evidence that was the subject matter of the Diaz report, it is properly within the scope of a rebuttal. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). Accordingly, the Court DENIES Defendants' MIL No. 1 to exclude Plaintiff's rebuttal expert.

2. *MIL No. 2 Indemnification*

Defendants' MIL No. 2 seeks to exclude any testimony or argument indicating that Defendants may be indemnified by the state if judgment is rendered against them. ECF No. 98 at 1. Defendants argue that evidence of indemnification is prejudicial because a jury may be more likely to "deliver a verdict against" Defendants or "inflate the award" if it believes that the state will cover the costs. *Id.* Plaintiff does not oppose this MIL to the extent Defendants do not open the door to admission of this evidence. ECF No. 108 at 2.

The Ninth Circuit has long held that "evidence of . . . indemnification is not admissible on the issue of damages." *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994). Given this longstanding precedent and Plaintiff's nonopposition, the Court GRANTS Defendants' MIL No. 2 to exclude evidence of indemnification.

3. *MIL No. 3 Bifurcation*

In their MIL No. 3, Defendants move to bifurcate the liability and punitive damages phases of the trial. ECF No. 99 at 1. Defendants assert that litigating punitive damages would require disclosing Defendant's sensitive financial information. *Id.* They argue that such disclosure risks prejudicing Defendants by confusing the jury, potentially leading them to award compensatory damages based on Defendants' ability to pay rather than on their liability. *Id.* Defendants also maintain that revealing a correctional officer's net worth to a prisoner may raise security concerns and lead to an increased risk of harassment. *Id.* Given these risks, Defendants assert that the Court should prevent the "unnecessary disclosure" of Defendants' private information by reserving argument on the amount of punitive damages until after Plaintiff "proves his entitlement to punitive damages." *Id.* at 2. Plaintiffs oppose bifurcation, arguing that it would confuse the jury and lengthen the trial unnecessarily. ECF No. 106 at 2.

Under Fed. R. Civ. P. 42(b) courts may bifurcate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." District courts have discretion to determine whether to

bifurcate a trial. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016). Under California law, "an award of punitive damages cannot be properly reviewed unless the record contains evidence of a defendant's financial worth." *Morgan v. Woessner*, 997 F.2d 1244, 1259 (9th Cir. 1993). This "evidence must be presented to the jury." *Id.*

Having considered the parties' arguments, the Court agrees with Defendants that revealing their sensitive financial information needlessly would cause them undue prejudice. Accordingly, the Court GRANTS Defendants' MIL No. 3 to bifurcate the trial. The trial will be bifurcated into two phases, the first establishing Defendants' liability and the second determining the extent to which Plaintiff is entitled to an award of punitive damages.

4. *MIL No. 4 Precluding Lay Opinions Regarding Diagnoses and Whether the Force Used Was Excessive*

In MIL No. 4, Defendants seek to bar Plaintiff from providing lay opinion testimony about his medical or mental health conditions and whether Mr. Garcia-Cortes's use of force "was excessive, unreasonable, or greater than necessary." ECF No. 100 at 1. While Defendants acknowledge that Plaintiff may provide testimony about "his own sensory perceptions, or symptoms," they assert that as a lay person, Plaintiff is not qualified to opine on his diagnoses or the cause of his mental and physical health conditions. *Id.* at 2–4. They argue that Plaintiff also lacks the expertise necessary to testify as to whether Mr. Garcia-Cortes's use of force was excessive. *Id.* at 2. Defendants maintain that admitting this evidence will cause undue prejudice and waste time by requiring Defendants to provide expert witness testimony to address each of the lay opinions provided. *Id.* at 4.

In opposition, Plaintiff argues that his limited education may hinder his ability to separate medical testimony from subjective testimony about his personal experience, causing him to inadvertently violate this MIL. ECF No. 114 at 3. Consequently, Plaintiff argues that excluding this evidence "exceeds the bounds of reason and fairness." *Id.*

United States District Court
Northern District of California

A lay witness cannot provide testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Courts in this district have previously applied Rule 701 "to bar lay witnesses from testifying . . . . as to the causation of [their] emotional distress and any diagnoses." *Lillie v. ManTech Int'l Corp.*, No. 17-cv-02538, 2018 WL 6323076, at *5 (C.D. Cal. Dec. 3, 2018); *see also NeSmith v. Cnty. of San Diego*, No. 15-cv-629, 2022 WL 272011, at *16 (S.D. Cal. Jan. 28, 2022) (precluding a non-expert witness from diagnosing an individual's PTSD or causally linking the PTSD to the alleged incident.). The Court recognizes, however, that the distinction between opining on a medical diagnosis and discussing one's experience of their own physical and mental health can often be subtle. *See Sanchez v. Master Prot., LP*, 20-cv-8472, 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022) (finding that under Rule 701, the plaintiff could not diagnose himself, but could "testify generally that he felt depressed, anxious, or sleep deprived"). Given the inherent challenges with differentiating medical testimony from subjective testimony a priori, the Court DEFERS ruling on Defendants' MIL No. 4 as to his diagnoses. Plaintiff is permitted to offer testimony on his personal feelings and experience, such as sadness or emotional distress. However, at trial, Defendants may object to any of his testimony regarding medical diagnoses or the cause of his health conditions.

Similarly, courts in this district have routinely excluded lay witness testimony about whether "the force used by [d]efendants was excessive, unreasonable, or greater than necessary." *Tan v. City & County of San Francisco*, No. 8-cv-1564, 2010 WL 726985, at *3 (N.D. Cal. Feb. 26, 2010); *Gray v. Clark*, 654 F. Supp. 3d 1062 (E.D. Cal. 2023); *see, e.g.*, *Chien Van Bui v. City & Cnty. of San Francisco*, 11-cv-4189, 2018 WL 1057787, at *7 (N.D. Cal. Feb. 27, 2018) ("Lay witnesses may testify as to what they saw and the situation as they perceived it, but they may not testify as to conclusions of whether the force the defendants used was excessive, unreasonable, or greater than necessary"). Once again, the Court recognizes that there might be only subtle

distinctions between testimony about Plaintiff's subjective experience and testimony asserting that the force Mr. Gonzalez-Cortes used was excessive. Therefore, the Court DEFERS ruling on Defendants' MIL No. 4 as to whether the force used was excessive.

*5. MIL No. 5 to Exclude Expert Testimony by Dirk Duffner (Daubert)*

In their final MIL, Defendants move to exclude Dirk Duffner's opinions, testimony, and any argument based on that testimony. ECF No. 101 at 1. Plaintiffs hired Mr. Duffner to provide a ballistics analysis on the 40mm foam baton round that struck Plaintiff's chest. Defendants argue that Mr. Duffner is not qualified to conduct this analysis because he is not a "forensic crime or ballistics expert." *Id.* Defendants further assert that Mr. Duffner's testimony is inadmissible under Fed. R. Evid. 702 because his analysis was not supported by accurate data. *Id.* at 1. In support of their argument, Defendants note that Mr. Duffner never saw the launcher or 40mm round that struck Plaintiff and he never visited Salinas Valley State Prison to obtain accurate measurements of Plaintiff's and Mr. Garcia-Cortes's relative positions. *Id.* at 4–5. They also argue that Mr. Duffner's methodology was deficient because he did not account for environmental factors such as wind. *Id.* at 1, 5

Plaintiffs oppose this motion, arguing that as a licensed mechanical engineer, Mr. Duffner is qualified to conduct a ballistics analysis to determine whether Mr. Garcia-Cortes shot Plaintiff directly. ECF No. 113 at 3. Plaintiffs also argue that Mr. Duffner based his calculations on sufficient data because he had access to substantial information about the launcher, 40mm round, and measurements from the prison yard. *Id.* at 4–5. Finally, Plaintiffs contend that Mr. Duffner used reliable principles and methods to reach his conclusions. *Id.* at 5–6.

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court's cases addressing the admissibility of expert testimony make clear that the district court must play a gatekeeping role, ensuring that any expert opinion admitted is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 589 (1993). However, so long as an expert's methodology is sound and the expert's opinions satisfy the requirements of Fed. R. Evid. 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

On December 1, 2023, the Judicial Conference's amendments to Rule 702 went into effect, "clarif[ying]" that expert testimony may be admitted only if the court determines "that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment. The amendment clarifies that a court must first find by a preponderance of the evidence that the expert's basis and methodology are sufficient. Only once that threshold has been met are further challenges to the expert's reliability or their conclusions considered questions of weight, which are left to the jury.

Mr. Duffner is a licensed mechanical engineer with a bachelor's degree in mechanical engineering from the University of California, Los Angeles and a master's degree in mechanical engineering from Stanford University. ECF No. 102-3 at 1. He has over forty years of experience in mechanical engineering and materials science. *Id.* at 2. Mr. Duffner is the owner of Duffner Engineering, a consulting firm that provides services in various areas of mechanical engineering, including failure analysis, materials science, and metallurgy. *Id.* at 1–2. He has published numerous articles in his field. *Id.* at 11–13. Although Mr. Duffner is not a ballistics expert, the Court finds that the ballistics analysis he conducted is within Mr. Duffner's area of expertise.

*Primiano*, 598 F.3d at 565 ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.") As discussed during his deposition, many of the calculations Mr. Duffner performed for his analysis involved fundamental physics principles. *See e.g.*, ECF No. 113-4 at 12 (explaining that the "coefficient of restitution" is "a high school physics kind [sic] thing"). Given Mr. Duffner's extensive experience in mechanical engineering, the Court concludes that his "specialized knowledge will help the [jury] understand" the force and trajectory of the 40mm round in question. *See* Fed. R. Evid. 702(a).

The Court also finds that Mr. Duffner had access to sufficient information to conduct his ballistics analysis. Although Mr. Duffner did not visit the prison or see the launcher and round responsible for striking Plaintiff, he based his calculations on a substantial amount of data. To perform this analysis, Mr. Duffner used, *inter alia*, the manufacturer's report on the size, weight, and velocity of the 40mm foam baton round when it is fired. ECF No. 113 at 4. Mr. Duffner was also provided with multiple photos, measurements, and diagrams of the relevant area in Salinas Valley State Prison, allowing him to calculate the relative distance between Mr. Garcia-Cortes and Plaintiff. *Id.* When doing this analysis, Mr. Duffner also took into account the materials used in the 40mm round and the stiffness of the dirt in the prison yard. *Id.* at 5. To the degree that Mr. Duffner did not take into account environmental factors such as wind, during his deposition he explained that any impact from such conditions would be "very small." ECF No. 113-5 at 47 ("And the environmental effects would be like something that would be an order of magnitude less than that of an effect. So it really . . . wouldn't make sense to use those values.").

The Court finds by a preponderance of the evidence that the proffered testimony meets the admissibility requirements set forth in Fed. R. Evid. 702. Mr. Duffner is qualified to offer these

United States District Court
Northern District of California

opinions and they are based on sound methodology. Any errors or deficiencies in his analyses are appropriately the subject of cross-examination. Accordingly, Defendants' MIL No. 5 is DENIED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiff's MIL No. 1 to exclude evidence of arrests, tattoos, law enforcement contacts, convictions, other litigation and other alleged bad acts of Plaintiff is GRANTED.

(2) Plaintiff's MIL No. 2 to exclude evidence of commendations, awards, promotions, or accolades received by Defendants and similar evidence is DEFERRED.

(3) Plaintiff's MIL No. 3 to preclude evidence that Defendants and other California Department of Corrections and Rehabilitation personnel were not subjected to disciplinary action or investigation stemming out of incidents pertinent to this case or were "exonerated" is GRANTED.

(4) Plaintiff's MIL No. 4 to exclude testimony on Defendant Meredith's alleged good faith and feelings about being sued is GRANTED as to Mr. Meredith's alleged good faith and DENIED as to his feelings about being sued.

(5) Defendants' MIL No. 1 to bar Plaintiff's improper "rebuttal" expert is DENIED.

(6) Defendants' MIL No. 2 to exclude evidence of Defendants' indemnification is GRANTED.

(7) Defendants' MIL No. 3 to bifurcate the trial is GRANTED.

(8) Defendants' MIL No. 4 to preclude lay opinions regarding diagnoses and whether the force used was excessive is DEFERRED.

(9) Defendants' MIL No. 5 to exclude expert testimony by Dirk Duffner is DENIED.

(10) This order terminates ECF Nos. 91, 93, 94, 95, 96, 98, 99, 100, 101.

**IT IS SO ORDERED.**

Dated: October 9, 2026

BETH LABSON FREEMAN
United States District Judge