JDP PC | Jeff Dominic Price SBN 165534
23465 Civic Center Way, No. 9
Malibu, California 90265
jdp@jdpfirm.com
Tel. 310.451.2222

Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. AMEZQUITA,<br>Plaintiff,<br>vs.<br>C.O. GARCIA-CORTES,<br>Defendant. | No. 5:20-cv-08285-BLF<br><br>PLAINTIFF'S TRIAL BRIEF<br><br>Trial: 11/13/2026<br>Case Filed: 11/23/2020 |

TO: THE HONORABLE BETH LABSON FREEMAN, U.S. DISTRICT JUDGE, AND TO THE DEFENDANT AND HIS ATTORNEYS OF RECORD:

## Table of Contents


| | | Page |
|---|---|---|
| I. | Background | 1 |
| II. | Key Facts and Evidence | 1 |
| III. | ECF No. 148 Re Plaintiff's Rebuttal Expert, Dirk Duffner, P.E. | 2 |
| IV. | Jose Amezquita's federal claim against Officer Pedro Garcia-Cortes | 4 |
| V. | Jose Amezquita's state law claims against Officer Pedro Garcia-Cortes | 4 |
| | A. Bane Act | 4 |
| | B. Battery by Law Enforcement Officer — Deadly Force | 5 |
| | C. Battery by Law Enforcement Officer — Nondeadly Force | 6 |
| | D. Negligence — Deadly Force | 7 |
| | E. Negligence — Nondeadly Force | 8 |
| VI. | Punitive Damages | 10 |
| VII. | Plaintiff's Theory of the Case | 11 |
| VIII. | Logistics — counsel's ability to meet with, advise and prepare Plaintiff for trial | 11 |
| | Conclusion | 12 |

# Table of Authorities

Page

Federal Statutes

42 U.S.C § 1983 .......... 4

Federal Rules of Civil Procedure

Fed. R. of Civ. P. 32(a)(4)(B) .......... 4, 5

Jury Instructions

Model Civ. Jury Instr. 9th Cir. 9.29 (2026) .......... 4

## Trial Brief

### I. Background

This case stems from an incident that occurred at the Salinas Valley State Prison on January 23, 2020. This case is about Defendant Garcia-Cortes's use of deadly force against Plaintiff for the purpose of causing harm and not in a good faith effort to maintain or restore discipline. The claims also involve Defendant's efforts to cover up his violation of Plaintiff's constitutional and legal rights.

Plaintiff maintains four claims against Defendant Garcia-Cortes. The claims against Garcia-Cortes include (1) Excessive Force; (2) Bane Act; (3) Battery; and (4) Negligence.

### II. Key Facts and Evidence

Plaintiff arrived at Salinas Valley State Prison ("SVSP") on November 3, 2018. For many months following his arrival at SVSP he was "threatened, ridiculed, intimidated, and otherwise harassed" by SVSP personnel for, *inter alia*, making allegations against the "Green Wall" of which Plaintiff believed Garcia-Cortes was a member. *See* ECF No. 40, p. 3.

On the morning of January 23, 2020, Defendant Garcia-Cortes was serving as the Facility A5 Control Booth Officer at SVSP. Garcia Decl. ¶ 3; ECF No. 32-6. At one point, he observed six inmates striking each other in the facial and upper torso areas with their fists. *Id*. Defendant Garcia-Cortes asserts that he gave them verbal orders to get down, but that the six inmates did not comply and continued fighting. *Id*. at ¶ 4. According to Garcia-Cortes, to prevent further injuries and to gain compliance with a lawful order, Defendant Garcia aimed his 40mm launcher at the left thigh of one of the fighting inmates. *Id*. He fired one direct foam baton[1] round from approximately 50 feet from his elevated position. *Id.* Garcia-Cortes reported that due to lag time and the rapid movement of the fighting inmates, the 40mm round struck the center of the intended inmate's back. *Id.*

Defendant Garcia-Cortes asserts that he continued to assess the incident as he reloaded a second direct foam baton round into the launcher. *Id*. at ¶ 5. Garcia-Cortes asserts that he again gave

---

[1] The foam baton round rubber bullet is the CTS 4557, which is made of closed cell neoprene, is 3.9" in length, weighs 60 grams (the equivalent of 12 nickels) and exits the launcher at a velocity of 240-260 feet per second. Exhibit 4.

the fighting inmates direct orders to get down with negative results. *Id*. Garcia-Cortes asserts that to prevent the fighting inmates from injuring each other, he aimed the 40mm launcher at another inmate's right thigh while ordering the combative inmates to get down. *Id*. Garcia-Cortes asserts that because the inmates continued to ignore his verbal orders, he fired a direct impact foam baton round from approximately 52 feet but missed his intended target. *Id*. According to Defendant, due to this inmate's movements, the round skipped on the ground and struck Plaintiff. *Id*.

Defendant Garcia-Cortes fired a third and a fourth 40mm round from the launcher. According to Defendant, after he fired the fourth round the inmates stopped fighting and he observed several correctional officers placing handcuffs on them.

Plaintiff asserts that "[a]s soon as the fight broke out, and without any warning to get down, [Plaintiff] was maliciously and sadistically shot indiscriminately" by Defendant Garcia-Cortes with a 40mm block gun, resulting in a deep bone bruise to his sternum. ECF No. 12 at ¶ 6. Plaintiff's medical records confirm that he sustained a bruise to the sternum (which is in Zone 3 of the body and an area of the body that is not to be targeted with a less lethal weapon) and that he suffered from pain to the area for several months.

Plaintiff asserts that Garcia-Cortes was aiming at him when he fired the 40mm round that struck him. *See, e.g.,* ECF No. 40 at pp. 5-6. Plaintiff asserts that following the incident Garcia-Cortes told an inmate that Plaintiff got what he had coming and that Garcia-Cortes told Plaintiff that next time he would use a "real gun." *Id.*

Garcia-Cortes attempted to cover up his brazen use of deadly force against Plaintiff, which he perpetrated for the purpose of causing harm by fabricating a false skip narrative. But had the second CTS 4557 round that Garcia-Cortes fired on the morning of January 23, 2020, struck the yard surface first it could not have hit Plaintiff in his chest. This demonstrates that Garcia-Cortes's acts were malicious, oppressive and perpetrated with reckless disregard for the rights of Plaintiff.

## III. ECF No. 148 Re Plaintiff's Rebuttal Expert, Dirk Duffner, P.E.

In this section, Plaintiff sets forth his understanding of the Court's rulings allowing Plaintiff to call Tony Diaz as part of Plaintiff's case-in-chief and then to call Dirk Duffner as a rebuttal expert to Mr. Diaz in his case-in-chief. Plaintiff also outlines the constraints that the Court has

imposed on such rebuttal testimony by Mr. Duffner. Plaintiff also briefly discusses the procedural history that led up to the rulings by the Court.

Consistent with the Court's ruling in the Order filed on November 4, 2026, ECF No. 148, Plaintiff intends to call Defendant's expert witness, Tony Diaz, in his case-in-chief, followed by Plaintiff's rebuttal expert, Dirk Duffner, P.E. Because he is located more than 100 miles from the Courthouse, Mr. Diaz is beyond the subpoena power of the Court and is thus unavailable. Accordingly, Plaintiff will present the testimony of Mr. Diaz by reading the deposition of Mr. Diaz, unless Plaintiff is permitted to present Mr. Diaz's testimony by remote videoconference.

Defendant disclosed his expert witness, Tony Diaz, on July 17, 2026. Mr. Diaz's report concluded that Defendant Pedro Garcia-Cortes' shot "ricocheted off the ground" before striking Plaintiff in the chest. ECF No. 102-6 at 14. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D), Plaintiff timely disclosed his rebuttal expert, Mr. Duffner, on August 17, 2026. ECF No. 91 at 1-2. Mr. Duffner's report contravenes Mr. Diaz's by concluding that Plaintiff could not have been struck in the chest unless Garcia-Cortes fired at him directly. ECF No. 102-3 at 4.

Before the Final Pretrial Conference, Defendant filed two *motions in limine* seeking to exclude Plaintiff's rebuttal expert, Mr. Duffner, on two grounds: (1) that his opinions exceeded the bounds of rebuttal testimony, and (2) that he lacked proper qualifications and sufficient data. The Court denied both motions, finding that Mr. Duffner was qualified, that his analyses were appropriately informed, and that his report was confined to the subject matter in Mr. Diaz's report. Accordingly, the Court held that Mr. Duffner could testify as a rebuttal witness.

During the October 16, 2026 Jury Instruction Conference, Defendant informed the Court that he might not call Mr. Diaz as an expert witness. Defendant asserted that withdrawing Mr. Diaz's testimony would preclude Plaintiff from calling Mr. Duffner as a rebuttal witness. In response, on October 21, 2026, Plaintiff, as allowed by the Court, filed a motion requesting: (1) that the court modify the scheduling order to allow Plaintiff to designate Mr. Duffner as a witness in his case-in-chief (Plaintiff herein refers to item (1) as the "Motion to Amend the Scheduling Order"), or (2) to allow Plaintiff, in the alternative, to call Mr. Diaz as a witness, and then subsequently call Mr. Duffner, in his case in chief. In concert with Plaintiff's alternative request,

Plaintiff also filed an administrative motion to add Tony Diaz to Plaintiff's witness list (Plaintiff herein collectively refers to item (2) and to the related administrative motion as the "Motion to Call Tony Diaz"). The Defendant opposed both such motions.

It is Plaintiff's understanding that the Court's order on the two motions provides as follows: As to Plaintiff's Motion to Amend the Scheduling Order, the Court denied Plaintiff's motion.

As to Plaintiff's "Motion to Call Tony Diaz," the Court granted Plaintiff's motion. With respect to said motion, the Court found that allowing Plaintiff to call Mr. Diaz as a witness in his case-in-chief would be harmless. The Court further specifically stated that, "should Plaintiff call Mr. Diaz, Mr. Duffner will still be barred from testifying until after Mr. Diaz has testified" and that "Mr. Duffner's testimony will also be confined to the subject matter Mr. Diaz discusses." The Court further "noted" that "Mr. Duffner remains a rebuttal witness, whose testimony will be limited to the subject matter discussed by Mr. Diaz." Order, ECF No. 148, Page 7 of 7.

In keeping with Plaintiff's understanding of the Court's Order, ECF No. 148, Plaintiff intends to call Mr. Diaz as a witness in his case-in-chief by reading the deposition of Mr. Diaz, taken on August 17, 2026, to the jury. After calling Mr. Diaz, Plaintiff intends to call Mr. Duffner to rebut the testimony of Mr. Diaz.[2]

## IV. Jose Amezquita's federal claim against Officer Pedro Garcia-Cortes

Claim No. 1 is brought against Defendant Garcia-Cortes under 42 U.S.C. § 1983 for excessive force. *See* Model Civ. Jury Instr. 9th Cir. 9.29 (2026). It is undisputed that Officer Garcia-Cortes was acting under color of law and the Court should so instruct the jury. The jury instructions in this case provide:

> Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." To establish the defendant Garcia-Cortes deprived the plaintiff Jose Amezquita of this Eighth Amendment right, the plaintiff must prove the following elements by a preponderance of the evidence:
>
> First, the defendant Garcia-Cortes used excessive and unnecessary force under all of the

[2] Mr. Diaz is located in Visalia, California, which is more than 100 miles from the Courthouse in San Jose. Thus, he appears to be beyond the reach of a Rule 45 subpoena and is thus unavailable. Fed. R. Civ. P. 32(a)(4)(B).

circumstances;
Second, the defendant Garcia-Cortes acted maliciously, which means for the purpose of causing harm, and not in a good faith effort to maintain or restore discipline; and
Third, the acts of the defendant Garcia-Cortes caused harm to the plaintiff Jose Amezquita.

In determining whether these three elements have been met in this case, consider the following factors:

(1) the extent of the injury suffered;
(2) the need to use force;
(3) the relationship between the need to use force and the amount of force used;
(4) any threat reasonably perceived by the defendant; and
(5) any efforts made to temper the severity of a forceful response, such as, if feasible, providing a prior warning or giving an order to comply.

Jury Instruction No. 37.

Plaintiff will establish all elements of the claim and will ask the jury for a verdict in his favor. He will establish that he was harmed through his own testimony, through the testimony of Michelle Zhang, M.D., a physician designated as an expert by the Defendant, by means of her deposition testimony, and through Exhibit 12.[3]

## V. Jose Amezquita's state law claims against Officer Pedro Garcia-Cortes

### A. Bane Act

To establish this claim, as provided in the jury instructions in this case, plaintiff must prove all of the following:

1. That Garcia-Cortes acted violently against Jose Amezquita to prevent him from exercising his right to safety conferred by Article I § 1 of the California Constitution or under the Eighth Amendment to be free from cruel and unusual punishment;

2. That Garcia-Cortes intended to or acted with reckless disregard for Plaintiff's enjoyment of the interests protected by the right to safety, or under the Eighth Amendment to be free from cruel and unusual punishment;

3. That Jose Amezquita was harmed; and

4. That Garcia-Cortes's conduct was a substantial factor in causing plaintiff's harm.

---

[3] Dr. Zhang is located in San Diego, California, more than 100 miles from the courthouse and is thus unavailable. *See* Fed. R. Civ. P. 32(a)(4)(B).

*See* 2 CACI 3066 (2025); Jury Instruction No. 42. Plaintiff will establish each and every element of the claim by a preponderance of the evidence and will ask the jury for a verdict in his favor.

B. Battery by Law Enforcement Officer — Deadly Force

Jury Instruction No. 44 provides: Plaintiff contends that Defendant Garcia-Cortes committed battery using deadly force. Defendant contends that there was no battery committed and that there was no use of deadly force. It is for you to decide whether Defendant Garcia-Cortes committed battery using deadly force.

Plaintiff Jose Amezquita claims that Defendant Garcia-Cortes unnecessarily used deadly force on him. To establish this claim, plaintiff must prove all of the following:

1. That Defendant Garcia-Cortes intentionally caused plaintiff to be touched;
2. That Defendant Garcia-Cortes used deadly force on plaintiff;
3. That Defendant Garcia-Cortes's use of deadly force was not necessary to defend human life;
4. That plaintiff was harmed; and
5. That Defendant Garcia-Cortes's use of deadly force was a substantial factor in causing plaintiff's harm.

A peace officer may use deadly force only when necessary in defense of human life. Defendant Garcia-Cortes's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Defendant Garcia-Cortes at the time, that deadly force was necessary:

to defend against an imminent threat of death or serious bodily harm to another person

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Defendant Garcia-Cortes and plaintiff leading up to the use of deadly force. In determining whether Defendant Garcia-Cortes's use of deadly force was necessary in defense of human life, you must consider Defendant Garcia-Cortes's tactical conduct and decisions before using deadly force on plaintiff and whether Defendant Garcia-Cortes used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so. You must also consider whether Defendant Garcia-Cortes knew or had reason to know that the person against whom he used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officers.

The evidence and the testimony of Plaintiff and of Mr. Duffner will establish that Garcia-Cortes used deadly force against Plaintiff by directly firing on Plaintiff and causing Plaintiff to be struck by the 40mm impact round. It is indisputable and will be established by the evidence presented at trial that the firing of a 40mm rubber bullet at a person's chest can cause fatal or serious injury. Plaintiff will establish each and every element of the claim by a preponderance of the evidence and will ask the jury for a verdict in his favor.

### C. Battery by Law Enforcement Officer — Nondeadly Force

Jury Instruction No. 43 provides: Plaintiff Jose Amezquita claims that Defendant Garcia-Cortes harmed him by using unreasonable force to against him. To establish this claim, Plaintiff must prove all of the following:

1. That Defendant Garcia-Cortes intentionally caused plaintiff to be touched;
2. That Defendant Garcia-Cortes used unreasonable force on plaintiff;
3. That plaintiff did not consent to the use of that force;
4. That plaintiff was harmed; and
5. That Defendant Garcia-Cortes's use of unreasonable force was a substantial factor in causing plaintiff's harm.

A correctional officer may use reasonable force to maintain discipline when the officer has reasonable cause to believe that a person has violated prison rules and is a threat to the safety of others.

In deciding whether Defendant Garcia-Cortes used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable correctional officer in Defendant Garcia-Cortes's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Defendant Garcia-Cortes and plaintiff leading up to the use of force. You should consider, among other factors, the following:

(a) Whether plaintiff reasonably appeared to pose an immediate threat to the safety of Defendant Garcia-Cortes or others;

(b) The seriousness of the disturbance at issue;

(c) If verbal orders were issued in response to the disturbance;

(d) If verbal orders were complied with by the plaintiff or other incarcerated persons.

Plaintiff will establish each and every element of the claim by a preponderance of the evidence and will ask the jury for a verdict in his favor.

### D. Negligence — Deadly Force

Jury Instruction No. 46 provides: Plaintiff contends that Defendant Garcia-Cortes was negligent in using deadly force. Defendant contends that he was not negligent and that there was no use of deadly force. It is for you to decide whether Defendant Garcia-Cortes negligently used deadly force.

Jose Amezquita claims that Defendant Garcia-Cortes was negligent in using deadly force against him. To establish this claim, plaintiff must prove all of the following:

1. That Defendant Garcia-Cortes was a peace officer;
2. That Defendant Garcia-Cortes used deadly force on plaintiff;
3. That Defendant Garcia-Cortes's use of deadly force was not necessary to defend human life;
4. That plaintiff was harmed; and
5. That Defendant Garcia-Cortes's use of deadly force was a substantial factor in causing's harm.

A peace officer may use deadly force only when necessary in defense of human life. Defendant Garcia-Cortes's use of deadly force was necessary to defend human life only if a reasonable officer

in the same situation would have believed, based on the totality of the circumstances known to or perceived by Defendant Garcia-Cortes at the time, that deadly force was necessary:

to defend against an imminent threat of death or serious bodily injury to another person

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Defendant Garcia-Cortes and plaintiff leading up to the use of deadly force. In determining whether Defendant Garcia-Cortes's use of deadly force was necessary in defense of human life, you must consider Defendant Garcia-Cortes's tactical conduct and decisions before using deadly force on plaintiff and whether Defendant Garcia-Cortes used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

As with the battery claim, the evidence and the testimony of Plaintiff and of Mr. Duffner will establish that Garcia-Cortes used deadly force against Plaintiff by firing on Plaintiff and causing Plaintiff to be struck by the 40mm impact round, and that the firing of a 40mm rubber bullet at a person's chest can cause fatal or serious injury. Plaintiff will establish each and every element of the claim by a preponderance of the evidence and will ask the jury for a verdict in his favor.

### E. Negligence — Nondeadly Force

Under California law, the elements of negligent use of nondeadly force by a law enforcement officer, as reflected in Jury Instruction No. 45, are: A prison correctional officer may use reasonable force to maintain discipline when the officer has reasonable cause to believe that a person is a threat

to the safety of another person. However, the officer may use only that degree of force necessary to maintain discipline.

Jose Amezquita claims that Defendant Garcia-Cortes was negligent in using unreasonable force against him. To establish this claim, plaintiff must prove all of the following:

1. That Defendant Garcia-Cortes used force against plaintiff;
2. That the amount of force used by Defendant Garcia-Cortes was unreasonable;
3. That plaintiff was harmed; and
4. That Defendant Garcia-Cortes's use of unreasonable force was a substantial factor in causing plaintiff's harm.

In deciding whether Defendant Garcia-Cortes used unreasonable force, you must consider the totality of the circumstances to determine what amount of force a reasonable correctional officer in Defendant Garcia-Cortes's position would have used under the same or similar circumstances. "Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Defendant Garcia-Cortes and plaintiff leading up to the use of force. Among the factors to be considered are the following:

(a) Whether plaintiff reasonably appeared to pose an immediate threat to the safety of or others;
(b) The seriousness of the crime at issue;
(c) Defendant Garcia-Cortes's tactical conduct and decisions before using force on plaintiff;
(d) If verbal orders were issued in response to the incident on the yard; and
(e) If the verbal orders were complied with by the plaintiff or other incarcerated persons.

Plaintiff will establish each and every element of the claim by a preponderance of the evidence and will ask the jury for a verdict in his favor.

## VI. Punitive Damages

Plaintiff seeks punitive damages against Defendant Garcia-Cortes on the federal claim only. Punitive damages are proper where the jury finds that the defendant's conduct is malicious, oppressive or done in reckless disregard for the plaintiff's rights. Plaintiff asserts that punitive damages are appropriate in this case.

As set forth in Jury Instruction No. 33, conduct is malicious if it is accompanied by ill will,

or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff’s safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff’s rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff. *See* Jury Instruction No. 33.

The evidence presented through Plaintiff’s witnesses, including Plaintiff himself and Plaintiff’s expert witness, Mr. Duffner, will establish that Defendant Garcia-Cortes fired the 40mm rubber bullet directly at Plaintiff, hitting him in the chest. This is conduct that is malicious, i.e., intended to cause harm, and not for a good faith effort to restore or maintain discipline. CDCR training materials reveal that firing a 40mm rubber bullet at a person’s chest can be fatal. Garcia-Cortes’s conduct reflects complete indifference to Plaintiff’s safety and rights and his conduct, which injured Plaintiff, was done with unnecessary harshness, was an abuse of authority and was clearly an act of taking advantage of Plaintiff’s weakness and vulnerability. Plaintiff is entitled to punitive damages.

## VII. Plaintiff’s theory of the case

Plaintiff’s theory of the case is that on a clear morning on January 23, 2020, during a disturbance involving several inmates on the SVSP Facility A yard—a disturbance that Plaintiff had no involvement in—Defendant took the opportunity to fire a CTS 4557 40mm rubber bullet directly at Plaintiff with a Penn Arms Single-Laucher and that Defendant did exactly that. Defendant Garcia-Cortes determined that he could mask this malicious act by using the disturbance as cover and he carried out that premeditated plan by fabricating the skip story and committing to that story in his report narrative, in his declaration, and at his deposition, not understanding that his story would not withstand scrutiny. Defendant’s act, violating Plaintiff’s constitutional rights, was shocking, malicious, done with reckless disregard, and oppressive.

## VIII. Logistics — counsel’s ability to meet with, advise and prepare Plaintiff for trial

Plaintiff’s counsel’s ability to prepare the Plaintiff for trial since about October 9, 2026, has

been truncated and impaired because CDCR placed Plaintiff in restricted housing (i.e., administrative segregation) on or about that day. Counsel had a scheduled videoconference with Plaintiff on October 19, 2026, but Plaintiff was not brought to the interview room, so there was a telephone call instead. Counsel had a scheduled videoconference with Plaintiff on October 22, 2026, but the audio did not work, so there was a telephone call instead. Plaintiff was transferred to Sierra Conservation Center on or about October 30, 2026. As counsel has no clients at that facility he has to obtain a new clearance to communicate directly with Plaintiff.

Counsel has made preliminary arrangements with the U.S. Marshals Service to be able to meet with Plaintiff in the lockup at the Courthouse. However, counsel's ability to meet with Plaintiff in the lockup on the Second Floor of the Courthouse is conditioned on the USM having personnel available and on one of the two interview rooms not being occupied by a federal inmate. Counsel understands that Plaintiff is being driven to the Courthouse for trial each day from the Sierra Conservation Center in Jamestown, California, about 2 hours away. Counsel requests that reasonable accommodations be made so that counsel can meet with Plaintiff in person inside the Courthouse for substantial periods of time so that he can properly provide legal counsel to Plaintiff and prepare Plaintiff for trial.

## Conclusion

Defendant is liable on all four claims and Plaintiff is entitled to a verdict in his favor. Plaintiff was physically, mentally and emotionally harmed by Defendant's conduct. He is entitled to compensatory damages. Defendant Garcia-Cortes's conduct was clearly malicious, oppressive and perpetrated with reckless disregard for Plaintiff's rights. An award of punitive damages against Garcia-Cortes is warranted.

DATED: November _6_, 2026

JDP PC

By ______________________

Jeff Dominic Price, Esq.
Attorney for the Plaintiff