ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
CASEY TRANG
Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
State Bar No. 209542
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3611
Fax: (415) 703-5843
E-mail: Michael.Quinn@doj.ca.gov
*Attorneys for Defendant Garcia-Cortes*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JOSE AMEZQUITA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**GARCIA-CORTES,**<br><br>Defendant. | 5:20-cv-08285-BLF<br><br>**DEFENDANT'S TRIAL BRIEF** |

## TABLE OF CONTENTS

Page

Introduction .... 1
Statement of Facts .... 2
I. Amezquita's Complaint and the Relevant Procedural History .... 2
II. CDCR Guidelines Regarding the Use of Force .... 3
III. Defendant Garcia-Cortes's Actions on January 23, 2020 .... 4
IV. Amezquita's February 25, 2020 Interview .... 5
Argument .... 6
I. The Evidence Shows Garcia-Cortes Did Not Use Excessive Force During the January 23, 2020 Incident .... 6
A. Legal Standards for Excessive Force Claims .... 6
B. Defendant Garcia-Cortes's Use of 40 mm Sponge Rounds to Quell the Prison Riot Was Not Excessive .... 7
1. Extent of the Injury .... 7
2. The Need for the Application of Force .... 8
3. The Relationship Between the Need for a Forceful Response and the Amount of Force Used .... 8
4. The Threat Reasonably Perceived by Defendant .... 9
5. Efforts Made to Temper the Severity of a Forceful Response .... 9
II. The State Claims Against Garcia-Cortes Are Meritless .... 10
A. Negligence .... 10
B. Battery .... 11
C. Bane Civil Rights Act .... 11
III. Alleged Damages .... 12
IV. Anticipated Attempts by Amezquita to Distract and Confuse the Jury .... 12
V. What is Relevant .... 13
Conclusion .... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amezquita v. Garcia-Cortez*
No. 20-CV-08285 BLF (PR), 2024 WL 3302069 (N.D. Cal. July 3, 2024) .......................... 1, 9

*Arrendell v. Perez*
No. D065719, 2015 WL 5461502 (Cal. Ct. App. 4th. Dist. Sept. 17, 2015) ........................... 10

*Brown v. Ransweiler*
171 Cal. App. 4th 516 (2009) ........................................................................................ 11

*Dicks v. Witte*
No. 16-cv-712-MMA-BLM, 2018 WL 295975 (S.D. Cal. Jan. 4, 2018) .................................. 9

*Edson v. City of Anaheim*
63 Cal. App. 4th 1269 (1998) ........................................................................................ 11

*Farmer v. Brennan*
511 U.S. 825 (1994) ....................................................................................................... 6

*Glass v. Scribner*
No. 1:04-cv-05953-AWI-DLB, 2009 WL 2579657 (E.D. Cal. Aug. 19, 2009) ........................ 8

*Hayes v. Cnty. of San Diego*
57 Cal. 4th 622 (2013) .................................................................................................. 10

*Hudson v. McMillian*
503 U.S. 1 (1992) ...................................................................................................*passim*

*in Acri v. Varian Assocs.*
114 F.3d 999 (9th Cir. 1997) ........................................................................................ 12

*In Re Nirran W.*
207 Cal.App.3d 1157 (1989) ........................................................................................ 10

*King v. State of California*
242 Cal. App. 4th 265 .................................................................................................. 12

*LeMaire v. Maas*
12 F.3d 1444 (9th Cir. 1993) .......................................................................................... 8

*Lopez v. City of Los Angeles*
196 Cal.App.4th 675 (2011) .......................................................................................... 10

*Martinez v. Stanford*
323 F.3d 1178 (9th Cir. 2003) ......................................................................................... 7

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*People v. Aguilar*
16 Cal. 4th 1023 (1997) .......... 10

*Phillips v. TLC Plumbing*
172 Cal.App.4th 1133 (2009) .......... 10

*Reynolds v. County of San Diego*
84 F.3d 1162 (9th Cir. 1996) .......... 12

*Solomon v. Negrete*
No. 2:10-cv-2103-WBS-AC, 2014 WL 4109582 (E.D. Cal. Aug. 18, 2014) .......... 7

*Wallace v. Tull*
No. CV 09-5075-VAP-AGR, 2011 WL 1832717 (C.D. Cal. March 14, 2011) .......... 9

*Whitley v. Albers*
475 U.S. 312 (1986) .......... 6, 7

*Wilson v. Seiter*
501 U.S. 294 (1991) .......... 6

**STATUTES**

Bane Civil Rights Act .......... *passim*

California Civil Code
§ 52.1(b) .......... 12

California Penal Code
§ 242 .......... 11

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment .......... *passim*

**OTHER AUTHORITIES**

California Department of Corrections and Rehabilitation's Department Operations Manual § 51020.5 .......... 3

## INTRODUCTION

On January 23, 2020, a violent fight broke out among six inmates on A-Yard at Salinas Valley State Prison (SVSP). Plaintiff Amezquita, a SVSP inmate who was not involved in the fight, claims in his operative complaint that without any warning, Defendant Garcia-Cortes "maliciously and sadistically shot indiscriminately" at him with a 40 mm block gun, resulting in a bruise to his sternum.

This Court previously found that there is no dispute that Garcia-Cortes fired four sponge rounds during his effort to get the six fighting inmates to stop fighting. And that those inmates "only stopped after Defendant Garcia fired a fourth round, and by then several staff had arrived to place the inmates in handcuffs. Accordingly, the Court finds that Defendant Garcia reasonably perceived that the situation was dangerous and that a threat of harm remained as the inmates continued to fight and ignore orders, and that he stopped once the threat had abated." *Amezquita v. Garcia-Cortez*, No. 20-CV-08285 BLF (PR), 2024 WL 3302069, at *8 (N.D. Cal. July 3, 2024). Further, that on summary judgment the Court stated "[b]ased on the evidence submitted, the *Hudson* factors indicate that Defendant Garcia applied force in a good-faith effort to maintain or restore discipline against the *fighting* inmates . . . ." *Amezquita v. Garcia-Cortez*, No. 20-CV-08285 BLF (PR), 2024 WL 3302069, at *9 (N.D. Cal. July 3, 2024) (emphasis in original).

Therefore, the only dispute as to liability in this case is whether Amezquita can prove that Garcia-Cortes, with his shot number two, diverted his attention from his good-faith effort to impose discipline on the fighting inmates to, instead, intentionally shoot at Amezquita from a distance of more than 50 feet, before returning to his efforts to restore order among the fighting inmates which involved Garcia-Cortes thereafter firing shot numbers three and four. Or put another way, whether, as Garcia-Cortes has consistently maintained, with shot number two Garcia-Cortes simply missed the fighting inmates he was intending to shoot with that shot.

Relevant to the issue of intent is a related factual dispute as to whether inmates on the yard, during the disturbance, were ordered to get down. Amezquita, who admits he was standing when he was hit and bruised on his upper chest at his sternum, denies there were any such warnings. But the evidence will show the jury that there were numerous such warnings repeatedly given

during this incident, and that it is common knowledge in prisons that inmates are ordered to get down when inmates engage in violent disturbances. Had Amezquita obeyed such lawful orders, as inmates are required to do, he would not have been hit and bruised on his upper chest.

Therefore, Amezquita has the burden to convince a jury that: (1) Garcia-Cortes intentionally, in the middle of a good faith effort to quell a six-inmate altercation, suddenly stopped that effort to deliberately shoot at Amezquita before Garcia-Cortes then resumed his efforts, successfully, to bring the inmate altercation to a halt; and (2) despite what will be overwhelming evidence to the contrary, the correctional officers present that day, including Garcia-Cortes, somehow deviated from standard required prison practice and did not order inmates on the yard to get down. Garcia-Cortes is confident that, if the jury follows the credible evidence, it will find in his favor.

## STATEMENT OF FACTS

### I. AMEZQUITA'S COMPLAINT AND THE RELEVANT PROCEDURAL HISTORY.

Amezquita claims that the January 23, 2020 fight on A-Yard at SVSP "[a]t no time was . . . deemed a serious event or a major disruption" within the prison. (ECF No. 12, ¶7.) He contends it was such a minimum incident that none of the participants were charged with serious rule violations. (*Id.*) Amezquita further asserts that nobody in close proximity to the A5 building was in any imminent danger of serious injury such that it would necessitate the firing of the gun, and that Defendant Garcia-Cortes did so in a "wild and unarticulated [sic] fashion which was completely unnecessary in any effort to protect inmate [or] staff safety." (*Id*. at ¶9.)

Amezquita contends that Defendant Garcia-Cortes violated his Eighth Amendment rights, and also asserts a number of state law claims against Defendant Garcia-Cortes, namely, battery, violation of the Bane Act, and negligence. (*Id*. at ¶¶25-26.) Amezquita claims that Defendant "knew or should have known that their conduct, attitudes and deliberately indifferent actions created an unreasonable risk of serious harm" to him. (*Id*. at ¶28.) As a proximate result of these violations, he "has suffered, is suffering, and will continue to suffer irreparable harm." (*Id*. at ¶29.)

In its December 8, 2022 Order of Partial Service and Dismissal, this Court concluded that Amezquita's "claim that Defendant Garcia shot him 'maliciously and sadistically,' without warning or necessity on January 23, 2020, was sufficient to state an excessive force claim under the Eighth Amendment." (ECF No. 20, 4:1-5.) It also exercised supplemental jurisdiction over a number of state law claims against Defendant Garcia-Cortes based on the excessive force incident: intentional infliction of emotional distress, battery, violation of the Banes Act, and negligence. (*Id.* at 6:25-7:2.)

Defendants filed their motion for summary judgment on November 3, 2023. (ECF No. 32.) Although Amezquita never filed an opposition to the motion, the Court relied on Amezquita's verified complaint and denied the bulk of the motion in a July 3, 2024 order. In denying summary judgment to Defendant Garcia-Cortes, the Court wrote that although "the force used against the fighting inmates was reasonable, there remains a genuine dispute over whether Defendant Garcia-Cortes used these circumstances to cause harm maliciously and sadistically on Plaintiff as a bystander." (ECF No. 40.)

## II. CDCR Guidelines Regarding the Use of Force.

Section 51020.5 of the California Department of Corrections and Rehabilitation's Department Operations Manual (DOM), entitled "Use of Force Options," provides that:

> [w]henever possible, verbal persuasion should be attempted in an effort to mitigate the need for force. The type of verbal persuasion will vary dependent upon the inmate's ability to understand. If time permits, verbal orders should be issued prior to resorting to force and are required to be provided before controlled force is used.

(ECF No. 32-5, Ex. A.)

The DOM further provides that "[u]se of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient." (*Id.*) One of the options available to staff are "less-lethal weapons," which are "any weapon that is not likely to cause death. A 37 mm or 40 mm launcher and any other weapon used to fire less-lethal projectiles is a less lethal weapon." (*Id.*) A 40 mm launcher fires 6325 impact rounds, non-lethal rubber rounds that officers are authorized to shoot below the waist.

## III. DEFENDANT GARCIA-CORTES'S ACTIONS ON JANUARY 23, 2020.

During the morning of January 23, 2020, Defendant Garcia-Cortes was serving as the Facility A5 Control Booth Officer at SVSP. (ECF No. 32-6, ¶3.) The control booth overlooked the outdoor prison yard. At one point, Garcia-Cortes observed inmates Hadden, Ganfield, Cortes, Hernandez, Ramirez, and Valdez striking each other in the facial and upper torso areas with their fists. (*Id.*)

The standard practice on prison yards, which is common knowledge in the prison, is that inmates who are on a prison yard when a disturbance begins will all be ordered by various means, such as verbally by officers, over the public address system, and by staff using whistles, to get down to the ground. This applies to any fighting inmates, and also to any bystander inmates so that, among other purposes, the chance of a bystander getting inadvertently hurt will be greatly reduced. While Amezquita denies there were any verbal warnings to inmates to get down, the defense evidence will show there were numerous such orders. But, as he admits, Amezquita, did not get down.

The fighting inmates also failed to comply with the orders and continued fighting. (*Id.* at ¶4.) Accordingly, to prevent further injuries and to gain compliance with a lawful order, Defendant aimed his 40mm launcher at the left thigh of inmate Hernandez. (*Id.*) Defendant fired one direct foam baton round from a distance of approximately 50 feet from his elevated position. (*Id.*) Due to lag time and the rapid movement of the fighting inmates, the 40mm round struck the center of Hernandez's back. (*Id.*)

Defendant continued to assess the incident as he reloaded a second direct foam baton round into the launcher. (*Id.* at ¶5.) He again gave orders to inmates on the yard to get down, but the fighting inmates continued to fight. (*Id.*) To prevent the fighting inmates from injuring each other, he aimed the 40mm launcher at inmate Cortes's right thigh. (*Id.*) He fired a direct impact foam baton round from approximately 52 feet but missed his intended target. (*Id.*) Due to inmate Cortes's movements, the round hit the ground. (*Id.*) Garcia-Cortes was later informed that round hit Amezquita. Amezquita incurred a bruise on his chest.

Because the inmates continued fighting, Defendant Garcia-Cortes immediately reloaded a third direct foam baton round and again gave inmates on the yard orders to get down. (*Id*. at ¶6.) Because the inmates again continued to fight, Garcia-Cortes aimed the 40mm launcher at the left thigh of inmate Ramirez and fired another 40mm direct impact foam baton round from approximately 53 feet, which struck his intended target. (*Id*.) Nevertheless, the inmates continued fighting, so Garcia-Cortes reloaded a fourth direct foam baton round. (*Id*. at ¶7.) Before firing the launcher for a fourth time, he again issued orders to the inmates on the yard. Because the fighting inmates failed to comply with his orders and continued fighting, he aimed the 40mm launcher at the left thigh of inmate Ganfield. (*Id*.) That round failed to strike its target, and instead struck a concrete table. (*Id*.) At that point, the six inmates stopped fighting and Defendant observed a number of correctional officers placing handcuffs on them. (*Id*. at ¶8.)

Garcia-Cortes did not see where the round that hit the ground, and the round that hit the concrete table, ultimately landed.

## IV. Amezquita's February 25, 2020 Interview.

On February 25, 2020, Amezquita was interviewed regarding an administrative grievance he filed in connection with the incident. (ECF No. 32-3, ¶8, Ex. D.) During that interview, Amezquita stated that while he was on the yard on January 23, 2020, he noticed a number of inmates arguing about "fourteen to sixteen feet to the left, next to me." (*Id*.) He further noted that the "free staff whistled like around maybe six-to-ten times." (*Id*.) Amezquita then "started walking away from the fight," and moved to his right, next to two tables. (*Id*.) When Amezquita turned around, he "saw . . . the shot coming," which dropped him "to the floor." (*Id*.) He then "got up" and was eventually examined by medical staff who provided him with pain medication, as the round had struck him in the chest and left a bruise. (*Id*.) During the examination, Amezquita reported that he "was walking" and the round "just got me." (ECF No. 32-1, Ex. C.) Amezquita returned to his housing unit after being seen by medical staff. (ECF No. 32-3, ¶8, Ex. D.)

## ARGUMENT

### I. THE EVIDENCE SHOWS GARCIA-CORTES DID NOT USE EXCESSIVE FORCE DURING THE JANUARY 23, 2020 INCIDENT.

On January 23, 2020, Amezquita was inadvertently hit in the chest with a 40-millimeter foam round while six other inmates were fighting less than 20 feet from him on a yard at SVSP. Because the fighting inmates continually refused multiple orders to stop fighting, serious injury could have occurred to them and correctional staff if Defendant Garcia-Cortes had failed to take the actions he did to help stop the fight. (ECF No. 32-6, ¶¶3-8.) As explained more fully below, Defendant Garcia-Cortes did not violate Amezquita's Eighth Amendment right to be free from excessive force because he did not shoot at Amezquita maliciously and sadistically for the purpose of harming him.

#### A. Legal Standards for Excessive Force Claims.

The Eighth Amendment prohibits infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.*

What is necessary to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley*, 475 U.S. at 320.) To prevail on an Eighth Amendment claim, the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. *Farmer*, 511 U.S. at 834.

It is well established that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*, i.e., whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Furthermore, "[w]hen the ever-present potential for violent confrontation and conflagration, ripens into *actual* unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight." *Whitley*, 475 U.S. at 321 (emphasis in original). This is because prison officials "must make their decisions in haste, under pressure and frequently without the luxury of a second chance." *Hudson,* 503 U.S. at 6."

The Ninth Circuit has relied on the factors set forth in *Hudson* to determine whether an officer's application of force was applied in a good faith effort to restore discipline. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The factors are: (1) the extent of the injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the prison officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* From these factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evidenced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *Whitley*, 475 U.S. at 321.

### B. Defendant Garcia-Cortes's Use of 40 mm Sponge Rounds to Quell the Prison Riot Was Not Excessive.

Here, the six inmates who ignored verbal orders to stop fighting necessitated a forceful response, and an application of the *Hudson* factors establish that Defendant Garcia-Cortes acted appropriately during the incident.

#### 1. Extent of the Injury.

As to the first *Hudson* factor, while the extent of the injury suffered by Amezquita, namely a bruise, is important, it is not dispositive as to whether Defendant violated the Eighth Amendment, particularly where, as discussed further below, all of the other *Hudson* factors favor Defendant. *See Hudson*, 503 U.S. at 7. The issue is also immaterial due to the absence of evidence that Defendant Garcia-Cortes acted with malice or sadistic intent to cause Amezquita harm. *See Solomon v. Negrete*, No. 2:10-cv-2103-WBS-AC, 2014 WL 4109582, at *20-21 (E.D.

Cal. Aug. 18, 2014) (finding that officers who fired 40 mm rounds at fighting inmates, and one of the rounds struck the bystander plaintiff, were entitled to summary judgment because the plaintiff failed to produce evidence of the officers' malicious and sadistic intent to harm plaintiff).

**2. The Need for the Application of Force.**

There can be no doubt that there was a need for the application of force during the January 23, 2020 incident, as six inmates were striking each other in the facial and upper torso areas with their fists. Defendant gave them verbal orders to get down, but the inmates failed to comply with the orders and continued fighting. (ECF No. 32-6, ¶¶3-8.)

Amezquita contends that the force was unnecessary during the incident because none of the participants were charged with serious rule violations. (ECF No. 12, ¶7.) In actuality, courts have recognized that "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent behavior" when inmates become disruptive. *LeMaire v. Maas*, 12 F.3d 1444, 1458 (9th Cir. 1993); *see also Glass v. Scribner*, No. 1:04-cv-05953-AWI-DLB, 2009 WL 2579657, at *5 (E.D. Cal. Aug. 19, 2009) ("Insubordination is a matter taken very seriously within the confines of an institutional setting.") Here, the force used by Defendant Garcia-Cortes was justified to prevent injuries to the fighting inmates and to restore order on the yard. Plus, the evidence will show that a number of the fighting inmates were indeed charged with prison rules violations for the fight in question.

**3. The Relationship Between the Need for a Forceful Response and the Amount of Force Used.**

The third *Hudson* factor, regarding the relationship between the need for a forceful response and the amount of force used, favors Garcia-Cortes's use of force. Here, there was a direct relationship between the need for a forceful response and the commensurate amount of force used. As this Court stated in the summary judgment order, "the Court finds that Defendant Garcia reasonably perceived that the situation was dangerous and that a threat of harm remained as the inmates continued to fight and ignore orders, and that he stopped once the threat had

abated." *Amezquita v. Garcia-Cortez*, No. 20-CV-08285 BLF (PR), 2024 WL 3302069, at *8 (N.D. Cal. July 3, 2024).

There can be no doubt that a reasonable relationship existed between the need for a forceful response and the amount of force used, because other measures to quell the riot had failed. *See Wallace v. Tull*, No. CV 09-5075-VAP-AGR, 2011 WL 1832717 (C.D. Cal. March 14, 2011) (defendant correctional officer's summary judgment motion granted where plaintiff was shot in the upper torso with a 40 mm launcher and where plaintiff was not fighting with another inmate, only standing, but refused to comply with orders to get down); *see also Dicks v. Witte*, No. 16-cv-712-MMA-BLM, 2018 WL 295975, at *2-3 (S.D. Cal. Jan. 4, 2018) (defendant correctional officer was entitled to judgment as a matter of law as to excessive-force claim where the plaintiff was involved in a fight occurring on the yard, custody staff ordered the inmates to get down on the ground, but the fighting inmates did not comply, and then custody staff used 40 mm launchers on fighting inmates). Under these circumstances, the use of less-lethal force used by Defendant Garcia-Cortes was appropriate to stop the inmates from fighting and restore order.

**4. The Threat Reasonably Perceived by Defendant.**

The fourth *Hudson* factor, regarding the threat that was reasonably perceived by the defendant, supports Defendant Garcia-Cortes' lawful use of force during the January 23, 2020 incident.

**5. Efforts Made to Temper the Severity of a Forceful Response.**

The fifth and final *Hudson* factor, regarding the efforts made to temper the severity of a forceful response, also favors Defendant, who reacted to the fight and did not prolong the use of force beyond what was necessary. He shouted multiple verbal orders for all inmates on the yard to "Get down!" (Garcia Declaration, ¶¶3-8.) The 40 mm "less lethal" launcher was used to separate the inmates, and Defendant stopped using it after the fighting inmates assumed prone positions. (*Id.*) Under these circumstances, Defendant Garcia-Cortes used only the force necessary to stop the fight.

## II. THE STATE CLAIMS AGAINST GARCIA-CORTES ARE MERITLESS.

Garcia-Cortes did not violate Amezquita's rights under the Bane Act, did not act negligently toward Amezquita, and did not batter him during the January 2020 incident.[1]

### A. Negligence

Under California law, the elements of negligence are: (1) a duty to use due care; (2) breath of that duty; (3) which proximately causes; (4) injury. *Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 685 (2011). The duty element is a legal question to be decided by the court. (*Phillips v. TLC Plumbing*, 172 Cal.App.4th 1133, 1139 (2009).

California courts have recognized that "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 632 (2013). Additionally, "[l]aw enforcement personnel have a degree of discretion as to how they choose to address a particular situation." *Id.*

Further, state courts have noted that the "use of hands or fists alone" may produce serious injury. *See People v. Aguilar*, 16 Cal. 4th 1023, 1028 (1997) (stating that "the use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury"); *see also In Re Nirran W.*, 207 Cal.App.3d 1157, 1161-62 (1989) (noting that a single punch to the jaw may support a finding of assault by means of force likely to produce great bodily injury).

In this case, it is undisputed that a fight on the yard occurred on January 23, 2020. The evidence will show that the fight was chaotic and dangerous. Defendant Garcia-Cortes acted reasonably under the circumstances to restore order and to keep other staff and inmates safe. *See Arrendell v. Perez*, No. D065719, 2015 WL 5461502, at *4-6, (Cal. Ct. App. 4th. Dist. Sept. 17, 2015) (finding a correctional officer not negligent for using lethal force, but missing her target and shooting an innocent bystander inmate in the left eye, because she was reasonably trying to

[1] Plaintiff has waived punitive damages with regard to his state claims. (ECF No. 131.)

stop other inmates from fighting). Accordingly, this Court should find that firing the 40 mm launcher was within the range of reasonable conduct under the circumstances.

**B. Battery**

Amezquita alleges that each Defendant battered him during the incident. Under California law, battery is defined as the "willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. To succeed on a civil claim for battery, the plaintiff must establish: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (2009). However, when a battery claim is brought against a peace officer, a plaintiff must also show that the defendant officer used unreasonable force. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998). Amezquita must therefore show that Defendant Garcia-Cortes used unreasonable and unjustified force again him. *Id.* And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* citing *Graham v. Connor,* 490 U.S. 386, at 396 (1989). The evidence will show that Garcia-Cortes did not commit a battery because he did not use excessive or unjustified force while attempting to stop the fight on the yard on January 23, 2020. As discussed, Defendant Garcia-Cortes's use of the 40mm launcher to break up a fight on SVSP's yard was reasonable, as the incident was dangerous and force was necessary to stop it.

**C. Bane Civil Rights Act**

Amezquita alleges that each Defendant violated the Bane Civil Rights Act ("Bane Act") by using excessive force against him during the incident.

The Bane Act allows individuals to pursue a civil action for damages where another person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or the rights secured by the Constitution or laws of this

state." *See* Cal. Civ. Code § 52.1(b) and *King v. State of California*, 242 Cal. App. 4th 265, 294. The Bane Act "does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170-71 (9th Cir. 1996), aff'd in part and rev'd in part on other *grounds in Acri v. Varian Assocs.*, 114 F.3d 999 (9th Cir. 1997). As a result, in the context of excessive force, the standard for the Bane Act is the same as the Eighth Amendment. Here, Defendant Garcia-Cortes did not interfere with Amezquita's rights. To the contrary, one of the rounds that Defendant fired in an effort to stop the six inmates from fighting accidentally struck Amezquita. The evidence will show that Defendant Garcia-Cortes did not use excessive force on Amezquita during the incident and did not violate the Bane Act.

## III. Alleged Damages.

Any potential damages, in the unlikely event liability is found, are limited by the extremely minimal alleged harm to Amezquita. Specifically, a bruise that was incurred when Amezquita, disobeying orders to get down, was hit by a nonlethal sponge round in his sternum, that was fired in an effort to quell a nearby fight between six other inmates on a prison yard. The bruise, as bruises do, healed. There is no evidence of any other damages. Further, Amezquita waived punitive damages on any of his state law based claims.

And as for the negligence claim, Amezquita's bruise that he incurred was entirely due to his own negligence when he failed to obey lawful orders to get down during the fight. Amezquita admits that he did not get down during the fight.

## IV. Anticipated Attempts by Amezquita to Distract and Confuse the Jury.

Defendant Garcia-Cortes anticipates that Amezquita will attempt to present flawed and prejudicial testimony and evidence in an attempt to confuse and distract the jury from what is, in essence, a simple case. Amezquita may attempt to try to persuade the jury that no force was necessary that day, and that inmates fighting on a prison yard is not a serious danger, as he pled in his complaint. He may attempt to put on evidence to quibble about whether the round that bruised him was not a ricochet, or that it was somehow impossible for Garcia-Cortes to shoot and miss an intended target that was 50 feet or more distant from him. He may attempt to show that

Garcia-Cortes should not have fired any shots because Amezquita was 15-20 feet away from the fighting inmates (who were about 50 feet or more away from Garcia-Cortes), and thereby presumably again arguing that Garcia-Cortes should have ignored the Eighth Amendment rights of the fighting inmates and let them continue to create a dangerous situation on the prison yard. He may attempt to prejudice and confuse the jury by positioning a sponge round launcher before the jury for it to gaze on during the trial. And Defendant will continue to vigorously object to efforts to present evidence that is irrelevant, unduly prejudicial or confusing, or otherwise violates the rules of evidence.

## V. WHAT IS RELEVANT.

What is not relevant is how big and threatening the sponge round launcher looks if it is displayed to the jury, or an inadmissible and deeply flawed and incomplete analysis that Amezquita may attempt to introduce by a mechanical engineer who has little, if any, relevant experience, about the supposed flight path of the sponge round. What is relevant is evidence as to Garcia-Cortes's intent with his second shot. And Amezquita's refusal to obey lawful orders to get down rather than remain standing and be bruised on his chest.

Amezquita may attempt to assert some inadmissible hearsay lies about what Defendant Garcia-Cortes said to him after the incident. By contrast, Defendant Garcia-Cortes will testify that he was focused on stopping a dangerous altercation on a prison yard, he did not intend to hit Amezquita, and while he missed with two of his four shots, he did not see where his missed shots eventually landed after they hit the ground and a concrete table. The evidence will also show that Amezquita admitted he did not get down during the incident.

## CONCLUSION

For the foregoing reasons, Amezquita should take nothing against Defendant, and judgment should be entered in favor of Defendant.

Dated: November 6, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
CASEY TRANG
Deputy Attorney General

***/S/ MICHAEL J. QUINN***
MICHAEL J. QUINN
Deputy Attorney General
*Attorneys for Defendant Garcia-Cortes*

SF2023600149
45464732.docx

# CERTIFICATE OF SERVICE

Case Name: **Amezquita, J. (AS4217) v. Garcia-Cortez, et al.** No. **5:20-cv-08285-BLF**

I hereby certify that on November 6, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S TRIAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 6, 2026, at San Francisco, California.

| | |
|---|---|
| G. Guardado | */s/ G. Guardado* |
| Declarant | Signature |

SF2023600149
45464773